UNITED STATES of America,
Plaintiff–Appellee,

v.

Johnny Ray GRAHAM,
Defendant–Appellant.

No. 87–3534.

United States Court of Appeals,
Sixth Circuit.

Argued June 10, 1988.

Decided Sept. 9, 1988.

Hugh D. Holbrock, Timothy R. Evans (argued) Holbrock & Johnson, Hamilton, Ohio, for defendant-appellant.

Kathleen Brinkman (argued), Asst. U.S. Atty., Cincinnati, Ohio, for plaintiff-appellee.

Before KENNEDY, GUY, and CONTIE, Circuit Judges.

RALPH B. GUY, Jr., Circuit Judge.

A jury convicted defendant, Johnny Ray Graham, on four counts of using interstate telephone communications with intent to bribe a sheriff, in violation of 18 U.S.C. § 1952(a)(3) (Travel Act), and one count of converting government funds, in violation of 18 U.S.C. § 641. On appeal, the defendant asserts that there was insufficient evidence to support his convictions and that the district court abused its discretion in its rulings on numerous evidentiary issues, in refusing to provide the jury with an entrapment instruction on the Travel Act charge, and in sentencing him. Upon review, we conclude that there was sufficient evidence to support Graham's convictions and that the district court committed no errors in its evidentiary rulings or in sentencing defendant Graham. However, as a result of the Supreme Court's recent decision in *Mathews v. United States*, — U.S. —, 108 S.Ct. 883, 99 L.Ed.2d 54 (1988), we reverse the district court's holding that defendant Graham was not entitled to an entrapment defense unless he admitted all of the elements of the offense and remand for a determination of whether there was sufficient evidence to warrant an entrapment instruction on the Travel Act charge.

## I.

Three men (Hank Tucker, T.D. Dunmon, and Monte Curry) were interested in opening a nightclub in White County, Tennessee, that offered its patrons entertainment including prostitution and gambling, and alcoholic beverages. In preparation for their business venture, Curry suggested that they meet with the defendant, Johnny Ray Graham, who was "well-connected." Even though liquor, gambling, and prostitution were illegal in White County, Tennessee, Graham assured the men during their first meeting that due to his "close relationship" with the White County Sheriff, John McGhee, that such violations would be tolerated. Graham further informed Tucker that he had a source in Detroit who could supply them with the drug crystal methamphetamine. Subsequently, Sheriff McGhee met with the men and confirmed that he would forego enforcing the laws against the club in return for a $3,800 contribution to his re-election campaign. Graham later told the men that the sheriff required that they pay off his $3,700 bank note in return for not enforcing the law against the club. Dunmon, Curry, and Tucker decided not to pursue their plans for opening a nightclub in White County. Tucker informed the FBI that Graham and Sheriff McGhee appeared to be involved in a bribery scheme.

Subsequently, Tucker introduced Graham to FBI Special Agent Richard Dorton, who posed as a wealthy trucking company owner interested in investing money in a nightclub. At an initial meeting between Graham and Agent Dorton, Graham reiterated his earlier representations that Sheriff McGhee would forego enforcing the gambling, liquor, and prostitution laws at the nightclub in exchange for paying off McGhee's bank loan. At subsequent meetings between Graham and Agent Dorton, Graham outlined how the liquor, gambling, and prostitution aspects of the proposed nightclub should be handled. Despite his reticence to introduce Agent Dorton to Sheriff McGhee, Graham and Agent Dorton had a number of interstate telephone communications in which they discussed McGhee's involvement in the proposed club's operation. After checking Agent Dorton for a wire and reiterating his demand that Dorton make a substantial payment to the sheriff as a condition of not enforcing the laws against the club, Graham introduced Dorton to Sheriff McGhee. At an initial meeting, Dorton and McGhee discussed the proposed club's activities and operations and it was agreed that Dorton would make a substantial contribution to McGhee's re-election campaign. The sheriff instructed Dorton that he should make no payment to him but, rather, make it directly to Graham. Thereafter, Dorton gave Graham $6,000 in government funds. Graham informed Dorton that he would deliver the money to Sheriff McGhee. In a subsequent telephone conversation, Sheriff McGhee told Agent Dorton that he had received the money.

In addition to introducing Agent Dorton to Graham, Tucker also introduced Federal Drug Task Force Officer Carl Tabar, who acted as a drug buyer interested in purchasing crystal methamphetamine. At an initial meeting, Officer Tabar and Graham discussed the sale and purchase of nineteen ounces of crystal methamphetamine. In preparation for the sale, Graham introduced Officer Tabar to suppliers Ernest Spence and James Minor. After discussing the drug's purchase price, Minor delivered eight ounces of white powder, which he represented to be crystal methamphetamine, to Tabar for $4,000. Of the $4,000 in government funds that Tabar paid to Minor, Graham received $2,000 for initially introducing Tabar to Spence and Minor. The white powder was later found not to be crystal methamphetamine but ephedrine, a non-controlled substance worth less than $150.

On July 18, 1986, the federal grand jury for the Southern District of Ohio returned a nine-count indictment against Graham. Counts one through six each charged Graham with using interstate telephone communications with the intent to bribe the sheriff, in violation of 18 U.S.C. § 1952(a)(3). Count seven charged Graham with violating 18 U.S.C. § 922(g)(1) by illegally transporting a firearm in interstate

commerce while he was under indictment for a federal offense. Count eight accused Graham of attempting to distribute crystal methamphetamine, in violation of 21 U.S.C. § 841(a)(1), and count nine charged the defendant with violating 18 U.S.C. § 641 by converting, to his own use, currency which belonged to the United States Government. The jury convicted Graham as to counts one, two, three, four, and nine. Thereafter, pursuant to 18 U.S.C. § 4205(c), the district court sentenced Graham to the maximum penalty for each of the five counts upon which he was convicted.

## II.

The defendant asserts that the district court erred in several evidentiary rulings. Graham specifically avers that the district court improperly permitted FBI Agent Dorton to testify with regards to what he understood Graham intended when he stated that Dorton should contribute to Sheriff McGhee's re-election campaign, i.e., a bribe versus a voluntary contribution. We find that the district court did not abuse its discretion in permitting Agent Dorton to testify regarding his understanding of the defendant's statements. A government agent may, like any other witness, testify in the form of an opinion as to his understanding of a defendant's statement. *See* Fed.R.Evid. 701; *United States v. DePeri*, 778 F.2d 963 (3d Cir.1985); *United States v. Russell*, 703 F.2d 1243 (11th Cir.1983).

Defendant also specifically avers that the district court improperly excluded the testimony of James Bown on the basis that it constituted extrinsic evidence of specific instances of conduct by a witness. The defendant proffered into evidence James Bown's testimony that he had an earlier conversation with initial investors Tucker and Dunmon concerning building a bomb to assassinate one of Dunmon's union rivals. Graham averred that Bown's testimony would provide a possible motive for Tucker's cooperation with the FBI and would lend credence to his claim that Tucker's testimony was not credible and that he possessed ulterior motives for aiding the

FBI in this particular investigation. Fed.R. Evid. 608(b) specifically prohibits a party from introducing extrinsic evidence to prove specific instances of conduct of a witness for the purpose of attacking or supporting his credibility. *See, e.g., United States v. Vinson*, 606 F.2d 149 (6th Cir.1979), *cert. denied*, 444 U.S. 1074, 100 S.Ct. 1020, 62 L.Ed.2d 756 (1980); *United States v. Young*, 567 F.2d 799 (8th Cir. 1977), *cert. denied*, 434 U.S. 1079, 98 S.Ct. 1273, 55 L.Ed.2d 786 (1978); *Hug v. United States*, 329 F.2d 475 (6th Cir.), *cert. denied*, 379 U.S. 818, 85 S.Ct. 37, 13 L.Ed.2d 30 (1964). Accordingly, the district court did not abuse its discretion in excluding Bown's proffered testimony that Tucker's prior "schemes" affected his credibility.

Graham further avers that Sheriff McGhee's statements should have been excluded as violative of the confrontation clause, in that Sheriff McGhee's statements should not have been admitted as co-conspirator statements since he was neither a member of the conspiracy nor were the statements made during or in furtherance of the alleged conspiracy. In order to establish a conspiracy, there must be an agreement between two or more persons to act together in committing an offense or series of offenses and an overt act in furtherance of the conspiracy. *United States v. Williams*, 503 F.2d 50 (6th Cir.1974). It is not necessary to prove that all the conspirators had dealings with all of the other conspirators, nor that all the conspirators even knew one another. *United States v. Mayes*, 512 F.2d 637 (6th Cir.), *cert. denied*, 422 U.S. 1008, 95 S.Ct. 2629, 45 L.Ed.2d 670 (1975). Neither is it necessary that all the conspirators be physically present at the moment the agreement is reached. *United States v. Butler*, 618 F.2d 411 (6th Cir.), *cert. denied*, 447 U.S. 927, 100 S.Ct. 3024, 65 L.Ed.2d 1121 (1980). Although a defendant must know the purpose of a conspiracy, it is not necessary that he know the full scope thereof, the detailed plans, operation, membership, or even purpose of the other members of the conspiracy. *United States v. Shermetaro*, 625 F.2d 104 (6th Cir.1980). In the instant case, the

objective of the conspiracy was to elicit bribes in the form of "campaign contributions" or "loan payments" in return for not enforcing the laws against the owners and operators of the proposed nightclub. The evidence of record clearly shows that Sheriff McGhee and Graham conspired to elicit bribes from potential investors in the nightclub as a condition for not enforcing the laws against the club. During one of their initial meetings, Sheriff McGhee acknowledged to Agent Dorton that he had spoken with Graham about the arrangement of a "campaign contribution" in return for overlooking the nightclub's illicit activities. Moreover, during a telephone conversation between Sheriff McGhee and Agent Dorton, McGhee acknowledged that Graham had delivered the "campaign contribution" to him. As late as May 13, 1986, Sheriff McGhee confided in Agent Dorton that he would be willing to provide the required protection upon the condition that he receive continued payments delivered through Graham. We find that there is sufficient evidence of record to prove, at a minimum, a tacit agreement to elicit bribes from potential nightclub investors. Moreover, the confrontation clause of the sixth amendment did not require the district court to show the unavailability of Sheriff McGhee as a condition precedent to admitting his out-of-court statements as a non-testifying co-conspirator. *See United States v. Inadi,* 475 U.S. 387, 106 S.Ct. 1121, 89 L.Ed.2d 390 (1986). Accordingly, the district court did not err in admitting Sheriff McGhee's statements into evidence.

### III.

■ Defendant further asserts that there was insufficient evidence to support his convictions under the Travel Act, 18 U.S.C. § 1952(a)(3), and for converting government funds under 18 U.S.C. § 641. The defendant specifically avers that his conviction under the Travel Act should be reversed since the government manufactured jurisdiction by initiating three of the four interstate telephone calls and that the single remaining interstate call was not a sufficient basis for a violation under 18 U.S.C. § 1952(a)(3) because there was no

continuous course of conduct involving a bribery scheme. Defendant further asserts that the interstate telephone calls were not made with the specific intent to facilitate the bribery of Sheriff McGhee since none of the calls contained specific references to bribery. Title 18 U.S.C. § 1952(a)(3) provides in pertinent part:

Whoever travels in interstate or foreign commerce or *uses any facility in interstate or foreign commerce,* including the mail, with intent to-

. . . .

(3) otherwise promote, manage, establish, carry on, or facilitate the promotion, management, establishment, or carrying on, of any unlawful activity,
and thereafter performs or attempts to perform any of the acts specified in subparagraph (1), (2), and (3), shall be fined not more than $10,000 or imprisoned for not more than five years, or both.

(Emphasis added).

■ Defendant was convicted of using four interstate telephone communications in furtherance of a bribery scheme. On December 9, 1985, Graham telephoned Agent Dorton and the two men discussed Sheriff McGhee's re-election campaign and his need for contributions. On December 12, 1985, Agent Dorton called Graham and the two men agreed that Dorton would meet with Sheriff McGhee. On January 13, 1986, Graham returned Agent Dorton's earlier telephone call and the two men discussed how the nightclub's gambling receipts would be laundered. On February 7, 1986, Agent Dorton called Graham and the two men discussed Sheriff McGhee's responsibilities in the nightclub's activities. Contrary to the defendant's protestations, the Travel Act does not distinguish between "initiated" and "returned" telephone communications. Moreover, the Travel Act does not mandate that the defendant place the telephone call to warrant a violation of the Act. The telephone call need not be an essential element of the scheme but need only facilitate or further the unlawful activity. The defendant provides no authority, and we are unable to locate any, that the term "use"

within the meaning of the Act refers solely to placing calls and leaves unpunished the use of interstate telephone communications to further an unlawful activity by the receiver of a call. The Act covers anyone who uses an interstate facility to facilitate an unlawful activity and, thereafter, performs or attempts to perform an act in aid thereof.[1] The evidence of record, when viewed in a light most favorable to the government, reveals a continuous course of conduct in promotion of a bribery scheme, even though defendant Graham initiated only two of the four interstate telephone communications. While, admittedly, Graham never specifically mentioned the word "bribery" during the course of his telephone conversations with Agent Dorton, circumstantial evidence permitted the district court to infer that the purpose and content of these communications was to elicit bribes from Dorton in exchange for Sheriff McGhee not enforcing the gambling, liquor, and prostitution laws against the owners and operators of the proposed nightclub.

■ We further find that there was sufficient evidence to support the defendant's conviction for converting government funds under 18 U.S.C. § 641. Section 641 provides in pertinent part:

> Whoever embezzles, steals, purloins, or knowingly converts to his use or the use of another, or without authority, sells, conveys or disposes of any record, voucher, money, or thing of value of the United States or of any Department or Agency thereof, ... or

> Whoever receives, conceals, or retains the same with intent to convert it to his use or gain, knowing it to have been embezzled, stolen, purloined or converted—

> Shall be fined not more than $10,000 or imprisoned not more than ten (10) years, or both....

The defendant was charged and convicted with aiding and abetting the conversion of $2,000 in government funds on or about December 30, 1985, arising out of his participation in a drug "rip-off" wherein an undercover agent paid drug suppliers Spence and Minor $4,000 for crystal methamphetamine but was instead given the non-controlled substance ephedrine. The evidence of record, when viewed in a light most favorable to the government, reveals that Tucker, who had been working with the FBI throughout its investigation, told Graham that he knew someone who was interested in purchasing crystal methamphetamine. Graham then telephoned Spence and told him that he had found people that they could beat in a sham drug "rip-off." Thereafter, Graham met with Officer Tabar on December 30, 1985, and discussed the sale of what was alleged to be crystal methamphetamine. After the men agreed upon the amount and price of the drug transaction, Minor sold eight ounces of ephedrine, which he represented to be crystal metamphetamine, to Officer Tabar for $4,000 in government funds. Subsequently, Graham received $2,000 of the government funds for his participation in the drug "rip-off" scheme. All of the facts and inferences establish that Graham

---

1. 21 U.S.C. § 843(b), a statute analogous to 18 U.S.C. § 1952(a)(3), provides in pertinent part:
   It shall be unlawful for any person knowingly or intentionally to *use any communication facility* in committing or in causing or facilitating the commission of any act or acts constituting a felony.... Each separate use of a communication facility shall be a separate offense under this subsection. For purposes of this subsection, the term "communication facility" means any and all public and private instrumentalities used or useful in the transmission of writing, signs, signals, pictures, or sounds of all kinds and includes mail, *telephone*, wire, radio, and all other means of communication.

(Emphasis added). While this circuit has not previously addressed whether the defendant must have initiated the telephone call in order to have violated 18 U.S.C. § 1952(a)(3), this circuit has held that a violation of 21 U.S.C. § 843(b) may be found where the defendant does not initiate the call but merely receives it. *See, e.g., United States v. McLernon,* 746 F.2d 1098, 1107 (6th Cir.1984). We find that the act of making arrangements over the telephone in furtherance of a bribery scheme, regardless of who initiates the telephone call, constitutes the prescribed "use" within the meaning of the Travel Act.

aided and abetted the conversion of, at least, $2,000 in government funds in the December 30, 1985 sale of ephedrine to Officer Tabar.

## IV.

■ The defendant avers that the district court failed to comply with Fed.R. Crim.P. 32(c)(3)(D) in sentencing him. Rule 32(c)(3)(D) provides:

> If the comments of the defendant and the defendant's counsel or testimony or other information introduced by them allege any factual inaccuracy in the presentence investigation report or the summary of the report or part thereof, the court shall, as to each matter controverted, make (i) a finding as to the allegation, or (ii) a determination that no such finding is necessary because the matter controverted will not be taken into account in sentencing. A written record of such findings and determinations shall be appended to and accompany any copy of the presentence investigation report thereafter made available to the Bureau of Prisons or the Parole Commission.

Graham specifically avers that the district court failed to make an appropriate Rule 32(c)(3)(D) determination as to whether Graham had threatened the participants in the trial. In *United States v. Fry*, 831 F.2d 664 (6th Cir.1987), this court recently held that, where a defendant asserts that the district court failed to properly comply with the mandates of Rule 32(c)(3)(D), "in order to show a due process violation, the defendant must raise grave doubt as to the veracity of the information and show that the court relied on that false information in determining the sentence." *Id.* at 667, *citing United States v. Eschweiler*, 782 F.2d 1385, 1387–88 (7th Cir.1986). A review of the record reveals that while the district court failed to make an express finding that the defendant had made any such threats, there is no indication that the district court relied on any alleged threat in fashioning the defendant's sentence. Where the record suggests that a trial court did not rely upon disputed information in fashioning a defendant's sentence,

the trial court has substantially complied with the mandates of Rule 32(c)(3)(D) even though it failed to make any express finding or determination of the disputed fact. *United States v. Ibarra*, 737 F.2d 825, 827 (9th Cir.1984), *cited with approval United States v. Fry*, 831 F.2d 664, 668 (6th Cir. 1987).

■ The defendant further states that the district court improperly sentenced him to consecutive terms on each of his four alleged violations under the Travel Act, 18 U.S.C. § 1952(a)(3). This circuit has held that, under the Travel Act, each use of an interstate communication facility in furtherance of an unlawful activity constitutes a separate punishable offense. *See United States v. Jabara*, 644 F.2d 574 (6th Cir. 1981). Accordingly, the district court properly sentenced Graham to consecutive sentences for multiple uses of interstate telephone communication facilities even though the telephone calls promoted the commission of one single, non-continuing crime—a scheme to elicit bribes from Agent Dorton in exchange for Sheriff McGhee not enforcing the law against the proposed nightclub's owners and operators. The district court did not abuse its discretion in imposing the defendant's sentence which was within the statutory penalty provided for the offenses for which he was convicted.

## V.

■ The defendant asserts that the district court erred in refusing to provide the jury with an entrapment instruction on the Travel Act charge. The defendant does not assert that the court erred in failing to provide the jury with an entrapment instruction on the charge of converting government funds. Prior to trial, the district court instructed Graham that he was not entitled to an entrapment defense unless he admitted all of the elements of the offense. Since, during the course of the trial, Graham denied utilizing the telephone to elicit bribes from Agent Dorton for Sheriff McGhee, the district court refused to provide the jury with any entrapment instruction. Until recently, it was well established within this circuit that a defendant

must admit all of the elements of the offense before he is entitled to an entrapment instruction. *See, e.g., United States v. Prickett,* 790 F.2d 35 (6th Cir.1986); *United States v. Whitley,* 734 F.2d 1129 (6th Cir.1984); *United States v. Ranzoni,* 732 F.2d 555 (6th Cir.), *cert. denied,* 469 U.S. 916, 105 S.Ct. 292, 83 L.Ed.2d 228 (1984); *United States v. Mitchell,* 514 F.2d 758 (6th Cir.), *cert. denied,* 423 U.S. 847, 96 S.Ct. 86, 46 L.Ed.2d 68 (1975).

Subsequent to the jury rendering its verdict and the district court sentencing Graham, the United States Supreme Court rendered its decision in *Mathews v. United States,* — U.S. ——, 108 S.Ct. 883, 99 L.Ed.2d 54 (1988). In *Mathews,* the United States Court of Appeals for the Seventh Circuit affirmed the district court's denial of the petitioner's pretrial motion seeking to raise an entrapment defense, ruling that entrapment was not available because the petitioner would not admit all of the elements of the offense for which he was charged. The Supreme Court held that even if a defendant denies one or more elements of the crime for which he is charged, he is entitled to an entrapment instruction whenever there is sufficient evidence from which a reasonable jury could find that the government entrapped the defendant. Cautioning that evidence that the government agent merely afforded the defendant with an opportunity or the facilities to commit the crime would be insufficient to warrant an entrapment instruction, the Supreme Court remanded the case for a determination of whether the evidence at trial was sufficient to support an instruction.[2] The Supreme Court in *Mathews* did not indicate specifically whether its decision should be applied retroactively. However, the Supreme Court's holding in *Griffith v. Kentucky,* 479 U.S. 314, 328, 107 S.Ct. 708, 716, 93 L.Ed.2d 649 (1987), that "a new rule for the conduct of criminal prosecutions is to be applied retroactively

to all cases, state or federal, pending on direct review or not yet final, with no exception for cases in which the new rule constitutes a 'clear break' with the past" requires that we remand the case for determination of whether there was sufficient evidence to warrant an entrapment instruction. While we would be inclined to find that there was insufficient evidence to warrant such an instruction since no witness testified that Agent Dorton initiated either the concept of an illegal activity at the proposed nightclub or the concept of making "campaign contributions" or "loan payments" to Sheriff McGhee in return for overlooking the nightclub's illicit activities, the district court is in a much better position than we are to evaluate the sufficiency of the evidence that was presented and further to make the determination of whether his early ruling deterred the defendant from presenting evidence he might otherwise have presented.

Accordingly, while we find that there was sufficient evidence to support Graham's convictions, and that the district court committed no errors in its evidentiary rulings and in sentencing Graham, we remand the case for a determination of whether there was sufficient evidence to warrant an entrapment instruction on the Travel Act charge. If such evidence was present or was not presented as a result of the court's ruling, then a new trial should be granted as to this particular charge only.

CONTIE, Senior Circuit Judge, dissenting.

The majority has remanded this case for a determination of whether there was sufficient evidence to warrant an entrapment instruction on the Travel Act charge. Because I believe that such a determination would be speculative, I respectfully dissent.

---

2. In remanding the case, the Supreme Court noted that:

The government contends as an alternative basis for affirming a judgment below that the evidence at trial was insufficient to support an instruction on the defense of entrapment. Of course evidence that government agents merely afforded an opportunity or facilities for commission of the crime would be insufficient to warrant such an instruction. But this question was pretermitted by the Court of Appeals, and it will be open for consideration by that court on remand.
108 S.Ct. at 888.

In *Mathews v. United States,* —— U.S. ——, 108 S.Ct. 883, 99 L.Ed.2d 54 (1988), the Court struck down the requirement that a criminal defendant must admit all elements of an offense before he is entitled to an entrapment instruction. "We hold that even if the defendant denies one or more elements of the crime, he is entitled to an entrapment instruction whenever there is sufficient evidence from which a reasonable jury could find entrapment." *Id.* at 886. In reaching its decision, the Court noted that the defendant had introduced at trial "the evidence that he had planned to adduce in support of his entrapment claim." *Id.* at 885 n. 2. The Court left the question of whether there was sufficient evidence to warrant an entrapment instruction open for consideration by the court of appeals on remand.

In the instant case, the district court ruled prior to trial that Graham was not entitled to an entrapment defense unless he admitted all the elements of the offense. The timing of this ruling may have prevented Graham from presenting evidence to support his claim of entrapment. Due to the preemptive nature of the district court's ruling, I believe the question confronting the court is not whether there was sufficient evidence to warrant an entrapment instruction, but whether there is evidence which was or was not presented at trial which would warrant such an instruction. Unlike the situation in *Mathews,* where the defendant apparently presented the evidence he would have presented to support his entrapment claim, one can only speculate as to what evidence Graham would have adduced if he had been allowed to present an entrapment defense without admitting all the elements of the offense. On remand, the majority gives the district court the following instruction: "[W]e remand the case for a determination of whether there was sufficient evidence to warrant an entrapment instruction on the Travel Act charge. If such evidence was present or was not present as a result of the court's ruling, then a new trial should be granted...." *Ante* at 763. Because I believe the district court could only speculate as to what evidence was not present

as a result of its ruling and because I believe that such speculation is unwarranted, I would grant the defendant a new trial on the Travel Act charge.