915 F.2d 1573
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Johnny R. GRAHAM, Defendant-Appellant.
 No. 89-3638.
 United States Court of Appeals, Sixth Circuit.
 Oct. 16, 1990.
 
 Before KEITH and MILBURN, Circuit Judges; and ZATKOFF, District Judge.*
 PER CURIAM:
 
 
 1
 Defendant Johnny R. Graham ("Graham") appeals from the district court's June 28, 1989, order denying his motion for a new trial for failure to issue an entrapment instruction to the jury. For the reasons set forth below, we AFFIRM.
 
 I.
 A.
 
 2
 The underlying facts of this case concern the plan by Graham and others to establish a club with gambling where alcohol would be served and prostitutes would be available. Gambling, sale of alcohol, and prostitution were illegal in the county of the proposed club. The club would remain open with the protection of the sheriff, provided he received payment. Graham was convicted of interstate communications with intent to facilitate and commit bribery. The underlying facts of this case are detailed in this court's opinion in United States v. Graham, 856 F.2d 756 (6th Cir.1988), cert. denied, 109 S.Ct. 1144 (1989) which we incorporated into this opinion.
 
 
 3
 This case is on appeal from a remand, by a panel of this Court, to determine whether sufficient evidence exists in the record to grant Graham an entrapment instruction or whether that evidence was lacking as a result of the district court's ruling which rested on law subsequently overruled. Graham, 856 F.2d 756.
 
 B.
 
 4
 On July 18, 1986, the federal grand jury for the Southern District of Ohio returned a nine-count indictment against Graham. Counts one through six each charged Graham with using interstate telephone communications with the intent to bribe a sheriff, in violation of 18 U.S.C. Sec. 1952(a)(3). Count seven charged Graham with illegally transporting a firearm in interstate commerce while under indictment for a felony offense[1], in violation of 18 U.S.C. Sec. 922(g)(1). Count eight accused Graham of attempting to distribute crystal methamphetamine, in violation of 21 U.S.C. Secs. 841(a)(1), 846; and count nine charged him with knowingly converting United States currency for his own use, in violation of 18 U.S.C. Sec. 641.
 
 
 5
 On October 31, 1986, the government filed a trial brief in which the entrapment issue was raised. The government argued that if Graham desired to raise the defense of entrapment, he must testify and admit all of the elements of the offenses with which he was charged. Moreover, the government requested that Graham raise the issue before the voir dire and opening statement.
 
 
 6
 Trial commenced on November 3, 1986. On November 12, 1986, the trial court removed count eight from jury consideration. At the charge conference held on November 13, 1986, Graham requested an entrapment instruction. Graham cited United States v. Garrett, 716 F.2d 257 (5th Cir.1983), for the proposition that a defendant may not deny the commission of the acts on which criminal liability is predicated and simultaneously argue that he was entrapped to perform those acts, unless the proof of entrapment is not contrary to proof that the defendant is otherwise not guilty. The court denied the request finding that the Sixth Circuit did not allow for such an exception.
 
 
 7
 The jury returned guilty verdicts on counts one, two, three, four, and nine. The trial court sentenced Graham on May 26, 1987, to five years on each of counts one through four, to be served consecutively, and ten years on count nine, to be served consecutive to the other counts, for a total of thirty years. Graham filed a timely notice of appeal on May 29, 1987.
 
 
 8
 On appeal, Graham asserted that the trial court erred in refusing to give the jury an entrapment instruction on the interstate communication charges. Subsequent to Graham's conviction, and while his appeal was pending, the Supreme Court decided Mathews v. United States, 485 U.S. 58, 62 (1988), which held that even if a defendant denied one or more elements of the crime for which he is charged, he is entitled to an entrapment instruction if there is sufficient evidence from which a reasonable jury could find that the government entrapped the defendant. Mathews reversed well-established Sixth Circuit law which held that a defendant must admit all elements of the offense before he is entitled to an entrapment instruction. A panel of this court rejected Graham's other arguments raised on appeal and remanded the case on the entrapment issue:
 
 
 9
 We remand the case for a determination of whether there was sufficient evidence to warrant an entrapment instruction on the Travel Act charge. If such evidence was present or was not presented as a result of the court's ruling, then a new trial should be granted as to this particular charge only.
 
 
 10
 United States v. Graham, 856 F.2d 756, 763 (6th Cir.1988), cert. denied, 109 S.Ct. 1144 (1989).
 
 
 11
 On remand, both parties filed memoranda on: (1) whether there was sufficient evidence to warrant an entrapment instruction; and (2) whether such evidence was not presented as a result of the district court's ruling that the defendant must admit all of the elements before he was entitled to an entrapment instruction. On June 28, 1989, the trial court denied Graham's motion for a new trial, finding that there was insufficient evidence to warrant an entrapment instruction. Graham filed an untimely notice of appeal on July 17, 1989, and requested an extension of time to file an appeal. The trial court did not rule on this motion.
 
 II.
 A.
 
 12
 The issue before the district court on remand was whether sufficient evidence was, or would have been, presented except for the overruled ruling, from which a reasonable jury could have found entrapment regarding the interstate communications counts. The district court reviewed the evidence and denied Graham's motion. Such decisions are left to the sound discretion of the trial judge and will not be disturbed absent a showing of abuse of discretion. United States v. Barlow, 693 F.2d 954, 966 (6th Cir.1982), cert. denied, 461 U.S. 945 (1983).
 
 
 13
 In United States v. Hodge, 539 F.2d 898, 906 (6th Cir.1976), cert. denied, 429 U.S. 1091 (1977) we stated that if the undisputed evidence demonstrates that there was no government inducement to commit the offense, the trial court may find it inappropriate to charge the jury on entrapment. Given the above, the district court did not abuse its discretion in this regard and its decision should not be disturbed.
 
 
 14
 A valid entrapment defense "has two related elements: governmental inducement of the crime, and a lack of predisposition on the part of the defendant to engage in the criminal conduct." Mathews v. United States, 485 U.S. 58, 63 (1988). Evidence that government agents merely afforded the defendant the opportunity or facilitated the commission of the crime is insufficient to warrant an entrapment instruction. See id. at 66. Predisposition, the second element, focuses on "whether the defendant was an 'unwary innocent' or instead an 'unwary criminal' who readily availed himself of the opportunity to perpetrate the crime." Id. at 63.
 
 
 15
 In the instant case, we accord great deference to the district court's determination that there was insufficient evidence to warrant an entrapment instruction. The district court heard all of the evidence, the testimony of the witnesses and Graham's taped statements.
 
 
 16
 Graham has failed to state that he would introduce any different or additional evidence at a new trial. Graham failed to show the trial court that there was or would have been sufficient evidence to support both elements of the defense. Without a showing of overreaching inducive conduct on the part of the government and lack of predisposition on the part of the defendant, the trial court properly found that Graham was not entitled to an entrapment instruction. United States v. Lee, 846 F.2d 531, 536 (9th Cir.1988); see United States v. Tindle, 808 F.2d 319, 329 (4th Cir.1986), appeal after remand 860 F.2d 125 (1988), cert. denied, 109 S.Ct. 3176 (1989). Graham did not show that either sufficient evidence exists to support both elements or that sufficient evidence would have been presented at trial from which a reasonable jury could find entrapment. To the contrary, the evidence is overwhelming that the government provided no more than an opportunity for Graham to commit the interstate communications offenses, and Graham was predisposed to commit the offenses when presented with the opportunity by the government.
 
 B.
 
 17
 Only if the government agent's behavior is such that a law-abiding citizen's will to obey the law is overborne, will the government have induced an offense. See United States v. Kelly, 748 F.2d 691, 698 n. 16 (D.C.Cir.1984) ("Inducement by law enforcement officials may take many forms including persuasion, fraudulent representation, threats, coercive tactics, harassment, promises of reward, or pleas based on need, sympathy or friendship. A solicitation, request or approach by law enforcement officials to engage in criminal activity, standing alone, is not an inducement.").
 
 
 18
 At no time did any of the government agents persuade, threaten, coerce, or harass Graham. In this case, virtually all of the conversations between Graham and the undercover agents were recorded. Therefore, the district court was able to hear the tapes and assess whether the government induced Graham to participate in the criminal activity.
 
 
 19
 The evidence shows that the undercover government agents did no more than afford Graham an opportunity to commit the interstate communications offenses. On November 7, 1985, when the federal authorities became involved in investigating Sheriff McGhee, the corruption already was well underway. The facts presented reveal that Graham made many interstate telephone calls to Agent Dorton where he discussed bringing gamblers and prostitutes into the proposed club. On several occasions, he travelled between Tennessee and Ohio as part of his course of conduct in promoting his unlawful activities. Again, Graham was involved in much of this activity before the FBI investigation began.
 
 
 20
 Graham can point to no evidence that indicates that he was induced to violate the Travel Act. Graham argues that Agent Dorton persisted in requesting that he be introduced to Sheriff McGhee.[2] He argues that he was reluctant to introduce Agent Dorton to Sheriff McGhee. There is no dispute that Agent Dorton did press Graham for a meeting with Sheriff McGhee. Yet, this does not constitute inducement by Agent Dorton, because he did not encourage Graham to engage in any criminal activity. Moreover, after Agent Dorton met Sheriff McGhee and the $6,000 bribe had been taken, Graham continued to call Agent Dorton. Graham met with Agent Dorton as late as April 4, 1986, to discuss financing the construction of the club, and he had subsequent telephone conversations with Agent Dorton after this date. Even after Agent Dorton stopped contacting Graham, Graham made repeated efforts to push the project along. It was Graham, not Agent Dorton, who urged the commission of the crime.
 
 
 21
 Even assuming, arguendo, that if granted a new trial, Graham would testify that Agent Dorton overbore his law-abiding nature by one or more forms of inducement, that evidence would be insufficient to entitle him to an entrapment instruction. Where a defendant testifies, at trial, that the government agent overbore his law-abiding will, and his testimony is contradicted by the overwhelming evidence of his own taped conversations with the government agent, a jury could only conclude that the defendant was not entrapped. United States v. Kelly, 748 F.2d 691, 700 (D.C.Cir.1984). The taped conversations presented consistently reflected that Graham was not induced to bribe Sheriff McGhee. We therefore hold that there was insufficient evidence for a jury to conclude that Graham was induced by the government into illegal activity.
 
 C.
 
 22
 There are several factors relevant to the predisposition prong of entrapment. In United States v. Reynoso-Ulloa, 548 F.2d 1329 (9th Cir.1977), cert. denied 436 U.S. 926 (1978), the Ninth Circuit considered the following:
 
 
 23
 [T]he character or reputation of the defendant, including any prior criminal record; whether the suggestion of the criminal activity was initially made by the Government; whether the defendant was engaged in the criminal activity for profit; whether the defendant evidenced reluctance to commit the offense, overcome only by repeated Government inducement or persuasion; and the nature of the inducement.... [T]he most important factor ... is whether the defendant evidenced reluctance to engage in criminal activity which was overcome by repeated Government inducement.
 
 
 24
 Id. at 1336 (citations omitted). Furthermore, a defendant accused of a bribery-type offense is not entitled to an entrapment instruction where the evidence indicates he had paid similar bribes in the past. See United States v. Lee, 846 F.2d 531, 537 (9th Cir.1988).
 
 
 25
 The taped conversations between Graham and Agent Dorton show that Graham was predisposed to commit bribery and to use interstate facilities to further his crime. The evidence shows that Graham and Sheriff McGhee were engaged in an on-going bribery conspiracy not only before the FBI investigation began, but also before the proposal of the club was ever raised. To assure Agent Dorton, Graham told him Sheriff McGhee would not enforce the law against the club:
 
 
 26
 When you come down here I'll tell you some of the things that uh he and I have worked [sic] and you'll feel completely comfortable then.
 
 
 27
 Joint Appendix at 83 (Government's Exhibit 7T). On February 18, 1986, before introducing Agent Dorton to Sheriff McGhee, Graham said of the sheriff:
 
 
 28
 Well, see, the same way, here's the, here's reason that he'll tell you that you can trust me, he and I have done [sic] been down the road together. He knows, he knows he can trust me.
 
 
 29
 Government's Exhibit 12T at 10. Graham expressed to Agent Dorton his desire to protect Sheriff McGhee by verifying that Agent Dorton was not a federal agent:
 
 
 30
 But I'm not riskin' myself now Dick. I'm riskin' a real personal friend and a man that will make me [sic] a lot of money and already made me [sic] a lot of money.
 
 
 31
 Joint Appendix at 182 (Government's Exhibit 10T). Graham also stated that Sheriff McGhee had offered to provide similar protection from law enforcement for a club Graham had invested in but failed to open.
 
 
 32
 Graham offered not only to bribe Sheriff McGhee but also to assist the club in other illegal activities. Graham proposed to bring in a crooked card dealer or "mechanic" into the club:
 
 
 33
 Well, now just that one man out in Oklahoma. He doesn't get busted before he can do it.... Plus I've got one man that's a top-notch mechanic over in Chattanooga right now.
 
 
 34
 * * *
 
 
 35
 * * *
 
 
 36
 He's one of the best gamblers ... he'll win more money can set [sic] and do more with a deck of cards and he can sit and play gin and remember every card ... He's just a top-notch mechanic....
 
 
 37
 Joint Appendix at 105, 159 (Government's Exhibit 10T). Graham suggested hiring a woman to manage the prostitutes at the club: "She's a high class whore aint she ... she can run 'em." Joint Appendix at 176 (Government's Exhibit 10T). Furthermore, Graham, for a fee, offered to bring in "high rollers", run the gambling, and collect gambling debts. He was also willing to launder drug money through the club and local banks.
 
 
 38
 Evidence of predisposition is also exemplified in the circumstances surrounding the interstate calls which constitute the interstate communications offenses. After their first meeting on November 15, 1985, Graham and Agent Dorton exchanged telephone numbers. On December 8, 1985, Graham paged Agent Dorton, but he did not respond. Pertaining to the interstate call supporting count one of the indictment, Graham called Agent Dorton on December 9, 1985. During the call, Graham and not Agent Dorton brought up the proposed club. Graham told Agent Dorton that although he expected Sheriff McGhee to win re-election, if he did not, at least for the next eight months the club would have no competition if it did not want any. After their meeting, the page and the call were the initial contacts between Graham and Agent Dorton.
 
 
 39
 In reference to the interstate call supporting count two of the indictment, Agent Dorton called Graham on December 12, 1985. Agent Dorton stated that the most important thing they needed to do regarding the club was to "make peace" with the sheriff. Graham agreed, but expressed concern about discussing the matter over the telephone. Graham assured Agent Dorton that in reference to Sheriff McGhee, they could look forward to another four or five years without any complications.
 
 
 40
 Count three of the indictment is supported by an interstate call Graham placed to Agent Dorton on January 13, 1986. Graham made arrangements for Agent Dorton to transfer money to a bank in Sparta, Tennessee in connection with the proposed club.
 
 
 41
 Count four of the indictment is supported by an interstate call Graham placed to Agent Dorton on February 7, 1986. Agent Dorton expressed concern about Sheriff McGhee because he could close the club; Graham stated that he would arrange whatever Agent Dorton wanted. We therefore conclude that Graham's own words on the tapes indicate that he was predisposed to carrying out the criminal activity.
 
 III.
 
 42
 We hold that the district court did not abuse its discretion in denying Graham's motion for new trial. The district court properly determined that there was not sufficient evidence from which a reasonable jury could have found entrapment regarding the interstate communications counts. Graham has failed to assert that he would introduce any different or additional evidence if granted a new trial.
 
 
 43
 For the foregoing reasons, we AFFIRM the decision of the Honorable S. Arthur Spiegel, United States District Judge for the Southern District of Ohio, denying Graham's motion for a new trial.
 
 
 
 *
 The Honorable Lawrence P. Zatkoff, United States District Judge for the Eastern District of Michigan, sitting by designation
 
 
 [1]
 At the time of the present offense, Graham was under an indictment in White County, Tennessee for assault with intent to commit first-degree murder, in violation of Tenn.Ann.Code Sec. 39-2-103
 
 
 [2]
 At trial, on direct testimony, Graham denied discussing bribing Sheriff McGhee with Agent Dorton at either their first meeting in Somerset, Kentucky or their second meeting in Cookeville, Tennessee. J.A. 741, 744. The conversations of both of these meetings were not recorded