12 F.3d 215
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES, Appellant,
v.
Cordelia WILLIAMS, Appellee.
 No. 92-5658.
 United States Court of Appeals, Sixth Circuit.
 Nov. 29, 1993.
 
 Before: JONES and BATCHELDER, Circuit Judges, and CELEBREZZE, Senior Circuit Judge.
 CELEBREZZE, Senior Circuit Judge.
 
 
 1
 Defendant Cordelia Williams appeals her 18 U.S.C. Sec. 1958 convictions and sentence arising from her use of interstate commerce in a murder-for-hire scheme.
 
 
 2
 A jury convicted Kentucky resident Cordelia Williams, as charged, of three counts of aiding and abetting her brother, Danny Williams, in plotting the murder-for-hire of her estranged husband, Earnest Mitchell of San Antonio, Texas. Danny Williams entered into a plea agreement with the government by which he pled guilty to one of the three counts charged.
 
 
 3
 The charges against defendant and her brother arose from her November, 1991, solicitation of her brother's assistance in finding a "hit man" to kill her estranged husband. Defendant purportedly sought to exterminate Mitchell before their pending divorce became final in December, 1991, in order to capitalize on his $150,000 life insurance policy which named defendant as beneficiary. Defendant also hoped to acquire a portion of defendant's investigative and security business.
 
 
 4
 At defendant's behest, Danny Williams contacted a fellow trucker, Gary Avery, for assistance. Williams asked Avery to kill Mitchell for $2,000 cash, or to refer someone else for the job. Danny Williams agreed to assist his sister in exchange for her promise to purchase a $25,000 trailer home for him. The record contains evidence that defendant placed a cash deposit on a trailer home.
 
 
 5
 Avery initially played along with Danny Williams, requesting information from him about the defendant, as well as information about the targeted victim, such as a photograph, address and phone number. After obtaining this information, but before contacting the defendant directly to plan the details of the actual murder, Avery contacted F.B.I. special agents in his town of residence, Lake Charles, Louisiana. Avery knew these particular Louisiana agents because he had previously provided them with information concerning interstate drug transactions.
 
 
 6
 The Louisiana F.B.I. agents asked Avery to phone the defendant in Kentucky from their Louisiana offices. The phone contact enabled Avery to introduce an undercover agent to defendant, posed as a "hit man", and led to several F.B.I.-monitored follow-up calls. The agents recorded conversations in which defendant and the undercover agent agreed to an "accidental" killing of Mitchell. After some haggling, defendant promised to pay the agent $3,000 upon her receipt of the life insurance funds and acquiesced to his demand for a $200 cash advance. Trial testimony, including defendant's own, demonstrated that defendant sent a $200 Western Union money order from Kentucky to Lake Charles, Louisiana, replete with the secret codes established by defendant and the undercover agent during the recorded phone conversations. Shortly after defendant's mailing of the money order, Kentucky-based F.B.I. agents arrested her.
 
 
 7
 In her defense at trial, defendant claimed not to remember her actions as a result of alcoholism and the resultant recurrent alcoholic blackouts from which she suffered. While defendant recalled sending the money order, she remembered only that she intended it to somehow stop her estranged husband from bothering her. She also justified any acts she might have unknowingly taken against Mitchell as retaliation for the physical and mental abuse he purportedly heaped on her before and during their brief marriage.[1]
 
 
 8
 Upon conviction, the court sentenced defendant to 108 concurrent months of imprisonment on each count, $150 in penalties and 3 years of supervised release. Defendant now challenges her convictions and sentence in four assignments of error, none of which we find to be well taken.
 
 I.
 
 9
 Defendant complains that federal agents purposely required Avery to converse with her in Kentucky via telephone from Louisiana solely to create a federal violation. The government contends that it presented sufficient evidence to sustain the interstate element of the crime and that, in any event, defendant's failure to raise this issue below prohibits her from challenging it now.
 
 
 10
 It should first be noted that though the record does not reveal a direct challenge to this point by defendant at trial, such as via a FED.R.CRIM.P. 29 or other motion, defense counsel's questions of government agents on cross-examination clearly illustrate defendant's position. Joint Appendix pp. 35-36, 51. Thus, this court will consider the issue raised during trial.
 
 
 11
 18 U.S.C. Sec. 1958 prohibits the use of interstate commerce facilities in the commission of murder-for-hire:
 
 
 12
 (a) Whoever travels in or causes another (including the intended victim) to travel in interstate or foreign commerce, or uses or causes another (including the intended victim) to use the mail or any facility in interstate or foreign commerce, with intent that a murder be committed in violation of the laws of any State or the United States as consideration for a promise or agreement to pay, anything of pecuniary value, shall be fined ... and imprisoned....
 
 
 13
 18 U.S.C. Sec. 1958(b)(2) defines "facility of interstate commerce" as including "means of transportation and communication."
 
 
 14
 Count one of the indictment against the defendant and her brother charged that they caused Gary Avery" ... to use a facility in interstate commerce, to wit, the telephone, from Lake Charles, in the State of Louisiana, to Murray, in the State of Kentucky, with intent that the murder of Earnest Mitchell be committed ... as consideration for a promise and agreement to pay, a thing of pecuniary value, to wit: $2,000.00." Joint Appendix p. 8. The second count accused defendant and her brother of causing "Don Dixon to use a facility in interstate commerce, to wit, the telephone, from Lake Charles ... to Murray, ... with intent that the murder of Earnest Mitchell be committed ... as consideration for a promise and agreement to pay, a thing of pecuniary value, to wit: $200.00 for expenses and an additional $3,000.00 upon collecting insurance money in the amount of $150,000.00." Joint Appendix p. 9. Finally, the indictment's third count charged that the defendant herself "used a facility in interstate commerce, to wit, Western Union, from Murray ... to Lake Charles, ..., with intent that the murder of Earnest Mitchell be committed ..." for the same consideration as was stated for count two. Joint Appendix pp. 9-10.
 
 
 15
 Evidence introduced at trial revealed that defendant solicited her brother's assistance in hiring a "hit man" to kill her husband with a promise to buy him a trailer home with the insurance proceeds she hoped to obtain as a result of her husband's "accidental" death. The brother, who like his sister lived and worked in Kentucky, contacted a fellow truck driver staying at an area hotel. The fellow driver, Gary Avery, contacted federal agents he had previously worked with in the town of his residence, Lake Charles, Louisiana. The federal agents instructed him to phone defendant from their offices in Lake Charles. The agent who posed as the "hit man" also communicated with defendant via the telephone from his Louisiana office. Defendant conceded sending the "hit man" the $200 he required via a Western Union money order to Lake Charles, Louisiana from Murray, Kentucky. Finally, it should be noted that the intended victim, Earnest Mitchell, resided in San Antonio, Texas and his murder inevitably would have required defendant's interstate travel or communication.
 
 
 16
 A defendant's use of an interstate facility, such as a telephone, to facilitate or further an unlawful activity is sufficient evidence to warrant a violation of the Travel Act, which includes 18 U.S.C. Sec. 1958. United States v. Graham, 856 F.2d 756, 760 (6th Cir.1988), cert. denied, 489 U.S. 1022 (1989). There is no statutory distinction between the initiation or the receipt of telephone communications. United States v. Graham, 856 F.2d at 760. Thus, the fact that a government informant phoned defendant from Louisiana regarding her plans to murder her estranged husband is no less punishable than if she had made the first call. See e.g. United States v. Wynn, 987 F.2d 354, 355-358 (6th Cir.1993) (Conviction affirmed where informant, who was approached to kill a spouse, contacted federal authorities and was given recording equipment with instructions to make calls from his Georgia residence to the potential murderer in Tennessee).
 
 
 17
 The defendant's claim that government agents purposely phoned her from Louisiana instead of Kentucky solely to turn her crime into a federal offense also lacks merit. Avery contacted authorities in Louisiana because he had a residence there and had previously dealt with these Louisiana agents. While Avery testified at trial that federal agents asked him to place calls to defendant in Kentucky from their Lake Charles, Louisiana offices, Avery also disclosed that he maintained his residence in Lake Charles, Louisiana. Joint Appendix pp. 35-36. Thus, defendant incorrectly posits that the government lured Avery outside of Kentucky solely to create a federal offense through the use of interstate communications and thereby engaged in the sort of inappropriate overreaching condemned in United States v. Archer, 486 F.2d 670 (2nd Cir.1973). Rather, defendant's phone discussions with out-of-state federal agents were initiated by Avery's Louisiana contacts and were only a part of an overall criminal plan to kill an out-of-state husband; the phone calls alone did not create defendant's federal criminal offense. United States v. McClernon, 746 F.2d 1098, 1107 (6th Cir.1989).
 
 
 18
 Constitutional due process ensures that a defendant cannot be convicted except by proof beyond a reasonable doubt of each element of the crime charged. In re Winship, 397 U.S. 358, 361-362 (1970). In determining the sufficiency of the evidence, the court must not weigh the evidence, consider the credibility of witnesses, nor substitute its judgment for that of the jury. Morelock v. NCR Corp., 586 F.2d 1096, 1104-1105 (6th Cir.1978) cert. denied, 441 U.S. 906 (1979). The court must view the evidence in the light most favorable to the prosecution and determine whether any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319 (1979), reh'g denied, 444 U.S. 890 (1979); United States v. White, 932 F.2d 588, 589 (6th Cir.1991). The appellate court must review the evidence, even if exclusively circumstantial, and its inferences in favor of the government. United States v. Connery, 867 F.2d 929, 930 (6th Cir.1989); United States v. Adamo, 742 F.2d 927, 932 (6th Cir.1984), cert. denied, 469 U.S. 1193 (1984).
 
 
 19
 This court finds the evidence that defendant provided descriptive information about her husband to a "hit man," put a down payment on a trailer home promised to her brother in exchange for his efforts in finding a "hit man," sent an interstate monetary advance to a "hit man" and used the telephone to plan the details of a murder is sufficient proof to sustain her convictions. United States v. Wynn, 987 F.2d at 358.
 
 
 20
 This assigned error is not well taken.
 
 II.
 
 21
 Defendant challenges the sufficiency of the evidence of her criminal intent, arguing that her alcoholism and propensity to suffer alcoholic blackouts negated her ability to intend to murder her estranged husband. The government argues that defendant waived her right to this challenge by failing to move the trial court for acquittal pursuant to FED.R.CRIM.P. 29. Notwithstanding the issue of waiver, the evidence of defendant's criminal intent is sufficient to sustain her convictions.
 
 
 22
 As previously stated, constitutional due process ensures that a defendant cannot be convicted except by proof beyond a reasonable doubt of each element of the crime charged. In re Winship, 397 U.S. at 361-362. We view the evidence in the light most favorable to the prosecution and determine whether any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. at 319; United States v. White, 932 F.2d at 589.
 
 
 23
 18 U.S.C. Sec. 1958 requires proof that the defendant used interstate commerce facilities "... with intent that a murder be committed." Intoxication may preclude the formation of specific intent in certain crimes and, in general, may be considered as it affects a defendant's state of mind. United States v. Newman, 889 F.2d 88, 92 (6th Cir.1989), cert. denied, 495 U.S. 959 (1990). Chronic alcoholism alone, however, does not excuse a defendant's criminal actions, especially where the defendant is aware of the problem and elects to drink. United States v. Newman, 889 F.2d at 93. See also, United States v. Carr, 550 F.2d 1058, 1058-1059 (6th Cir.1977).
 
 
 24
 In her defense, defendant told the court that she had suffered from chronic alcoholism for approximately fifteen years and had received treatment for her condition on more than one occasion, even while serving in the military. Defendant further testified that, at the time of the crime, she was drinking and suffering "alcoholic blackouts" which destroyed her memory of the entire period. A clinical social worker, called as a witness by the defense, defined "alcoholic blackouts," but conceded he had never treated defendant and was unfamiliar with her case. He gave no opinion of whether or not defendant actually suffered such memory lapses. Defendant presented no additional documentary or other evidence concerning the condition or treatment to demonstrate that alcohol directly precluded her ability to form the requisite intent to kill her estranged husband. While the record supports defendant's chronic alcoholism problem, it does not provide evidence that defendant could not form the intent necessary to sustain her convictions. In fact, defendant's "alcoholic blackout defense" only served to support her contention that she could not remember any of her actions except sending the money order. Evidence tending to show what defendant could remember at trial regarding the crimes charged is irrelevant to the question of what she intended at the time of her criminal activities and whether alcohol inhibited her at that time in any way. United States v. Newman, 889 F.2d at 92-93. See United States v. Echeverry, 759 F.2d 1451, 1454 (9th Cir.1985).
 
 
 25
 In contrast to defendant's weak alcoholism defense, the government introduced significant circumstantial evidence that defendant intended to have her estranged husband killed. The government produced tape recorded conversations in which defendant revealed her desire to have her husband die "accidentally" in order to collect $150,000 in life insurance benefits. The tapes demonstrate her willingness to ultimately pay $3,000 to the undercover agent for the murder. Defendant sent a Western Union money order for $200 from Kentucky to the agent in Louisiana to secure his services as "hit man." Further, documentary and testimonial evidence indicated that defendant had already placed a down payment on the trailer home she promised to her brother in exchange for his assistance in securing a "hit man" to kill her estranged husband.
 
 
 26
 This court finds the evidence sufficient to support the defendant's convictions for using interstate commerce facilities with the intent to murder her husband.
 
 
 27
 This assigned error fails.
 
 III.
 
 28
 Defendant avers that her due process rights were violated by the court's admission at trial of unsworn testimony. The government once again noted defendant's failure to raise the issue at trial. Notwithstanding defendant's failure to raise the issue, defendant's argument lacks merit.
 
 
 29
 Defendant accurately observes that government witness, Anna Gertrude Shepherd, was not listed as being sworn in with the other witnesses at the beginning of the trial. Joint Appendix, p. 18. At the point Shepherd took the stand, however, the transcript describes Shepherd as having been sworn: "ANNA GERTRUDE SHEPHERD, called by the UNITED STATES, sworn:". Joint Appendix, p. 52. In absence of evidence to the contrary, this court should presume that a witness who took the stand in a district court trial and whose transcribed testimony was introduced with the word "sworn" was actually sworn to be truthful. United States v. Woods, 613 F.2d 629, 637 (6th Cir.1980), cert. denied, 446 U.S. 920 (1980). See United States v. Hoffa, 349 F.2d 20, 52-53 (6th Cir.1965), affm'd 385 U.S. 293 (1966).
 
 
 30
 In any case, even if Shepherd had not been sworn, her testimony, by itself, could not have unduly prejudiced defendant. Shepherd testified that, in her capacity as an assistant manager of a Murray, Kentucky I.G.A. store, she sent a Western Union money order to Louisiana for the defendant. At trial, defendant conceded that she sent the money order, the undercover agent acknowledged receiving it in Louisiana, and the money order itself was introduced into evidence. Thus, Shepherd's testimony was cumulative in nature and contributed no new material evidence adverse to the defendant.
 
 
 31
 This assigned error lacks merit.
 
 IV.
 
 32
 The district court assigned defendant a total offense level of 30 and a criminal history level I, which indicated a guideline range of 97-121 months imprisonment. The court accordingly sentenced defendant to 108 concurrent months of imprisonment on her convictions. Defendant now charges that the court erred because it meant to sentence her to the lowest end of the range, but failed to completely acknowledge its previous errors. The government once again accurately notes that defense counsel failed to challenge the final sentence at the sentencing hearing. Notwithstanding the failure to object, defendant's argument lacks merit.
 
 
 33
 At the sentencing hearing, the court at first evidenced some confusion over the appropriate sentencing guideline offense levels. After a recess, during which the court consulted with probation officers, the court corrected its prior error and imposed sentence pursuant to an offense level of 30 and a criminal history category of II. When defense counsel reminded the court the criminal history level should be I, the court acknowledged that it was aware of that and had "misstated" the category as II.
 
 
 34
 18 U.S.C. Sec. 1958 mandates that a defendant convicted of this crime shall not be imprisoned more than ten years. U.S.S.G. Sec. 2E1.4(a)(1) provides a base offense level of 32 for a violation of 18 U.S.C. Sec. 1958. The court awarded defendant a two point reduction for acceptance of responsibility, thus arriving at a total adjusted offense level of 30. The parties do not dispute the designation of defendant's criminal history level as I. The applicable guideline range is 97-121 incarceration. The court's imposition of a 108 month sentence is clearly within the appropriate Guidelines range and will thus not be reversed on appeal as an abuse of the court's discretion, in absence of evidence to the contrary. United States v. Tucker, 404 U.S. 443, 446-447 (1972); United States v. Hamilton, 949 F.2d 190, 192 (6th Cir.1991); United States v. Davis, 919 F.2d 1181, 1187 (6th Cir.1990); United States v. Draper, 888 F.2d 1100, 1105 (6th Cir.1989).
 
 
 35
 We decline to address the government's concern that defendant would challenge the district court's purported failure to state its reasons for imposing sentence because it was not raised by the defendant on appeal.
 
 
 36
 This assigned error fails.
 
 
 37
 The judgment of the district court is hereby AFFIRMED.
 
 
 38
 BATCHELDER, Circuit Judge, concurring.
 
 
 39
 I write separately in this case because I believe the majority applies an incorrect standard in reviewing the defendant's assignments of error regarding the sufficiency of the evidence. The majority opinion correctly treats as a sufficiency of the evidence claim the defendant's assertion that the government manufactured jurisdiction, see United States v. Graham, 856 F.2d 756 (6th Cir.1988), and the defendant presents her assignment of error relative to criminal intent as a claim of insufficient evidence. However, the majority, while noting that neither of these assignments of error was preserved by the filing of a Fed.R.Crim.P. 29 motion or otherwise, appears to create a new standard of review for this circuit, viz., "[T]hough the record does not reveal a direct challenge to this point by defendant at trial, such as via a Fed.R.Crim.P. 29 or other motion, defense counsel's questions of government agents on cross-examination clearly illustrate defendant's position ... Thus, this court will consider the issue raised during trial." [draft opinion at p. 4] The majority opinion then proceeds to review in detail the evidence relative to each of these assignments of error, citing to Jackson v. Virginia, 443 U.S. 307, 319 (1979) for the appropriate standard: "The court must view the evidence in the light most favorable to the prosecution and determine whether any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." [draft opinion at p. 7]
 
 
 40
 The appropriate standard of review in this Circuit, however, is that described in United States v. Swidan, 888 F.2d 1076, 1080 (6th Cir.1989):
 
 
 41
 However, the standard of review is different where the defendant fails to preserve his right to challenge the sufficiency of the evidence. This court has held, "Absent a manifest miscarriage of justice, we are unable to review the district court's denial of a Rule 29 Motion where the defendant did not renew that Motion at the close of all the evidence." In this case, defense counsel did not make a Rule 29 Motion at any time. Thus, absent a "manifest miscarriage of justice," defendant has forfeited his right to challenge the sufficiency of the evidence.
 
 
 42
 (citations omitted) See also United States v. Cox, 957 F.2d 264, (6th Cir.1992).
 
 
 43
 Thus, while I agree with the majority that even under the Jackson v. Virginia standard this defendant cannot demonstrate that the evidence was insufficient in either respect claimed, I cannot concur in the reasoning of this opinion which would appear to require the Jackson level of review regardless of the defendant's failure to preserve the sufficiency of the evidence claim for appeal.
 
 
 
 [1]
 Defendant and Mitchell were married in July 1990 and estranged five months later. Their divorce became final in December 1991