**UNITED STATES of America,
Plaintiff–Appellee,**

**v.**

**Jackie R. PHILLIPS,
Defendant–Appellant.**

**No. 89–5485.**

United States Court of Appeals,
Sixth Circuit.

Argued Oct. 6, 1989.

Decided Oct. 17, 1989.

Michael Winck, Asst. U.S. Atty., Office of the U.S. Attorney, Knoxville, Tenn., for U.S.

Michael G. Hatmaker, Jacksboro, Tenn., for Jackie R. Phillips.

Before MARTIN and MILBURN, Circuit Judges, and CONTIE, Senior Circuit Judge.

MILBURN, Circuit Judge.

Defendant-appellant Jackie R. Phillips appeals his jury conviction for unlawful distribution of cocaine in violation of 21 U.S.C. § 841(a)(1). For the reasons that follow, we affirm.

## I.

### A.

On September 8, 1988, a federal grand jury for the Eastern District of Tennessee returned an indictment charging that defendant "did unlawfully, willfully, knowingly, intentionally and without authority distribute cocaine hydrochloride, a Schedule II, narcotic controlled substance" in violation of 21 U.S.C. § 841(a)(1). The indictment charged that this activity occurred on or about April 4, 1988. At his arraignment on September 23, 1988, defendant pleaded not guilty.

A jury trial commenced in federal district court on February 2, 1989, and the jury returned a verdict of guilty that same day. Defendant filed a motion for a new trial or, alternatively, for a judgment of acquittal, and the district court denied both motions. This timely appeal followed.

### B.

The evidence against defendant consisted primarily of the testimony of Larry Layne and Rebecca Layne that they had purchased one ounce of cocaine from defendant while working as undercover agents for the FBI. Rebecca Layne had known defendant all of her life. She introduced defendant to Larry Layne, her husband, supposedly because she heard rumors that defendant was selling cocaine.

Though the testimony of defendant differs considerably from the testimony of the Laynes on details, the proof was clear that on the evening of April 2, 1988, defendant produced, at the request of either Larry or Rebecca Layne, a small amount of cocaine [1] in a "baggie" plastic bag. Larry Layne

and the defendant then discussed a future deal in which defendant would supply Larry Layne with one ounce of cocaine. The future deal for one ounce of cocaine was confirmed in later telephone conversations which were recorded.

Defendant, Larry Layne, and Rebecca Layne arranged to meet at McDonald's in Lake City, Tennessee. From McDonald's they went to the Foothills Bar for the physical exchange of the cocaine for money. Larry Layne paid the defendant $1,800 in exchange for 25.1 grams of 89 percent pure cocaine hydrochloride. Larry Layne and defendant discussed the possibility of a future deal for up to one kilogram of cocaine. In the recorded conversation loaded with drug jargon, defendant and Larry Layne discussed, among other things, the method of payment, expected purity, and the form of drugs to be provided in any future deals.

At the trial, defendant presented an entrapment defense and claimed that he was merely "leading Larry Layne on." Defendant claimed that he had had an affair with Rebecca Layne in the summer of 1985, during a period of great emotional strain when he and his wife were separated.

Defendant testified that the affair lasted approximately two and one-half months and ended sometime late in the summer of 1985. He did not see Rebecca Layne after the affair ended until February of 1988, a short time after her marriage to Larry Layne. Defendant further testified that Rebecca Layne called him repeatedly between February 1988 and April 2, 1988, asking him to supply her with cocaine. He repeatedly refused but finally agreed to her requests only because of his trust and affection for her. Defendant insisted that he had never dealt in cocaine before this specific incident and that his only source, Peggy Hughes, had died in a car accident.

Rebecca Layne denied any romantic involvement with the defendant. After Larry and Rebecca Layne admitted past drug use on direct examination, counsel for the

---

1. The substance, produced in response to requests for cocaine, was never analyzed because Larry Layne gave it away, supposedly to a drug user, in an effort to enhance Layne's credibility as a dealer/undercover agent.

defendant was permitted to cross-examine both of them extensively concerning past drug use. Rebecca Layne admitted during cross-examination that she had used cocaine once since she had been working for the FBI. Defendant's counsel was especially interested in whether the Laynes had used cocaine at a party in Lake City, Tennessee, at the home of a Mr. Harold D. Bray. Both Rebecca and Larry Layne admitted being at the party and acknowledged that cocaine was being passed around at the party, but the Laynes both denied having used any cocaine at that party.

After the Laynes had testified, defendant proffered the testimony of Donna Vanormer and Theresa West to the effect that they had observed both the Laynes sniffing cocaine during the party at the Bray residence.[2] The government objected to the testimony of Vanormer and West, citing Fed.R.Evid. 608(b), which, except for evidence of some prior convictions, forbids extrinsic evidence of prior misconduct offered for the sole purpose of impeaching a witness' testimony. This appeal presents the question of whether the federal district judge abused his discretion in excluding the testimony of Vanormer and West.

## II.

### A.

A trial judge's decision regarding an evidentiary ruling will not be reversed absent a clear showing of abuse of discretion. *See, e.g., Schrand v. Federal Pac. Elec. Co.,* 851 F.2d 152, 157 (6th Cir.1988); *United States v. Rios,* 842 F.2d 868, 872 (6th Cir.1988) (per curiam), *cert. denied,* —— U.S. ——, 109 S.Ct. 840, 102 L.Ed.2d 972 (1989) (citing *United States v. Mahar,* 801 F.2d 1477, 1495 (6th Cir.1986)). Abuse of discretion exists where the reviewing court is firmly convinced that a mistake has been made. *Schrand,* 851 F.2d at 157 (citing *Hill v. Bache Halsey Stuart Shields, Inc.,* 790 F.2d 817, 826 (10th Cir.1986)).

### B.

Defendant argues that the trial court abused its discretion by refusing to allow the proffered testimony of Vanormer and West. At the trial, defendant argued only that the evidence was admissible because it directly contradicted the testimony of key prosecution witnesses, thereby casting doubt on their credibility.[3] On appeal defendant now argues that the testimony would have revealed bias. We conclude that under either theory the proffered testimony was inadmissible.

The proffered testimony contradicted Larry Layne's testimony that he had not used drugs since he had begun working for the FBI, and would have contradicted both Larry and Rebecca Layne's testimony that they had not used cocaine at a party in the home of Harold Bray. The government

---

**2.** The pertinent part of the direct examination of Donna Vanormer established that she attended a party at the residence of Harold Bray and continued:

Q. Was this after Rebecca Hawkins and Larry Layne were married?
A. Yes. I believe it was about a week or two after.
Q. At the time of the party, did, did you see anyone with any cocaine?
A. Yes, I did.
Q. Did you see Larry with any cocaine?
A. Yes, I did.
Q. What did you see him do with it?
A. I seen him pull it out of a jacket pocket, and he opened it up and he snorted some of it and he handed it to Becky and she did some of it.
Q. When you say "Becky," is that Becky Layne?
A. Yes.

Q. What did they dip the cocaine with?
A. It was a little yellow tie thing, something—some kind of tie thing that went around a bag, you know.
Q. Did each of them use the cocaine?
A. Yes.

The record reflects that Theresa West would have testified to the same facts.

**3.** The following exchange took place between the court and counsel for defendant:

THE COURT: All right, sir; *and you offer that for the purpose of, of going to the credibility of Rebecca Layne,* particularly, in fact, that on cross-examination by you when she was a witness for the government she stated she hadn't smoked—I mean, used cocaine on the instance that this woman is now talking about?
MR. HATMAKER: *That's correct.*

objected to the testimony on the ground that the testimony was irrelevant and inadmissible under Federal Rule of Evidence 608(b) [4] since it was offered to prove a fact which was not material to the case. The court sustained the objection because it was "so far removed from [the] case" and "might be more damaging than it would be probative."

"Fed.R.Evid. 608(b) specifically prohibits a party from introducing extrinsic evidence to prove specific instances of conduct of a witness for the purpose of attacking or supporting his credibility." *United States v. Graham*, 856 F.2d 756, 759 (6th Cir. 1988), *cert. denied*, —— U.S. ——, 109 S.Ct. 1144, 103 L.Ed.2d 204 (1989). Extrinsic evidence of prior misconduct should be excluded when it is only "remotely relevant." *See United States v. Meyer*, 803 F.2d 246, 249 (6th Cir.1986), *cert. denied*, 480 U.S. 936, 107 S.Ct. 1580, 94 L.Ed.2d 770 (1987).

The record shows that the party at the Harold Bray residence was in no way connected to the drug deal defendant was charged with. If the proffered testimony were taken as true, it would not increase or decrease the probability that defendant sold the drugs or that he was entrapped. The only consequence of the testimony would have been to create a swearing contest about a matter which, in the words of the trial judge, was "far removed from this case." Thus, we conclude that the evidence was properly excluded unless it was relevant for some purpose other than contradicting the testimonies of Larry and Rebecca Layne.

### C.

Defendant argues that the testimony should have been allowed for the purpose of showing that the government's witnesses were biased, an argument not raised in

the district court. We note that this court will not reverse on grounds not raised in the district court unless the claimed error amounts to "plain error." *See United States v. Causey*, 834 F.2d 1277, 1281 (6th Cir.1987), *cert. denied*, —— U.S. ——, 108 S.Ct. 2019, 100 L.Ed.2d 606 (1988). Plain errors are "those harmful ones ... so rank that they should have been apparent to the trial judge without objection, or that strike at the fundamental fairness, honesty or public reputation of the trial." *Id.* Defendant argues that it was plain error for the trial judge to exclude the evidence in question.

■ First, we will determine whether *any* error was committed. Though the Federal Rules of Evidence do not specifically so state, prior misconduct of a witness which is probative of the bias of that witness may be proved by extrinsic evidence. *See United States v. Meyer*, 803 F.2d 246, 249 (6th Cir.1986) (extrinsic evidence of misconduct is admissible if it "relates to beliefs of the witness or to preexisting relationships" probative of bias); Weinstein, *Weinstein's Evidence* ¶ 608[05] (1988). Defendant impliedly argues that all extrinsic evidence of possible bias, no matter how irrelevant, is admissible, but this argument goes too far. *Meyer*, 803 F.2d at 249. Admissibility is a matter within the discretion of the trial court. *Id.*

Thus, in *United States v. Graham*, 856 F.2d at 759, the trial judge was found to have been properly acting within his discretion to exclude extrinsic evidence of the government's witness' participation in a bombing plot, though such evidence might have shown the witness' ulterior motive for testifying. This court reached a similar conclusion where defendant offered extrinsic evidence that a prosecution witness had dealt extensively with convicted felons.

---

**4.** Federal Rule of Evidence 608(b) provides in relevant part:

*Specific instances of conduct.* Specific instances of the conduct of a witness, for the purpose of attacking or supporting the witness' credibility, other than conviction of crime as provided in rule 609, may not be proved by extrinsic evidence. They may, however, in the discretion of the court, if probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness (1) concerning the witness' character for truthfulness or untruthfulness, or (2) concerning the character for truthfulness or untruthfulness of another witness as to which character the witness being cross-examined has testified.

*United States v. Meyer*, 803 F.2d at 249. In this case, the only bias defendant can point to is a desire by the government witnesses to save their jobs by allegedly lying on cross-examination about a remote matter as opposed to lying about a fact material to the case. Therefore, we hold that the extrinsic evidence of prior drug use by the government's witnesses was properly excluded under the trial judge's exercise of his discretion. Thus, we find no plain error.

### III.

Accordingly, for the reasons stated, the judgment of the district court is AFFIRMED.