911 F.2d 734
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
William B. WARD, Defendant-Appellant.
 No. 89-2268.
 United States Court of Appeals, Sixth Circuit.
 Aug. 21, 1990.
 
 Before KEITH and ALAN E. NORRIS, Circuit Judges, and JOHN W. POTTER, District Judge.*
 PER CURIAM.
 
 
 1
 Defendant, William Benjamin Ward, appeals from his criminal convictions and sentence arising out of the bombing of three mailboxes. Defendant contends that he is entitled to a new trial. In support of his contentions, he asserts four assignments of error: (1) the district court improperly restricted his closing argument; (2) there was insufficient evidence to convict him on two of the counts; (3) the court improperly prevented him from attacking the credibility of two of the government's witnesses; and (4) the court erred in computing his sentence under the sentencing guidelines.
 
 I.
 
 2
 On March 16, 1989, a grand jury returned a five-count indictment against defendant charging him with unlawfully manufacturing pipe bombs, possessing a pipe bomb, and destroying a United States mailbox.[1]
 
 
 3
 During the course of the trial, the following relevant evidence was presented. On September 1, 1987, a postal employee in Battle Creek, Michigan, found burned mail and the remnants of a pipe bomb in a United States mailbox. On January 17, 1988, a resident of Hudsonville, Michigan, found the remnants of a pipe bomb in his residential mailbox which had been blown apart. On January 20, 1988, a third pipe bomb exploded in a United States mailbox located in Rogers Plaza, a shopping mall in Grand Rapids, Michigan.
 
 
 4
 Defendant, during the winters of 1987 and 1988, lived in the home of his girlfriend's grandparents, Clayton and Jean Bunn. During that time, Jean Bunn found a pair of yellow-handled pliers in a drawer to which defendant had access.
 
 
 5
 On May 17, 1988, Postal Inspector Edward Reda questioned defendant at his parents' home in Lowell, Michigan. Defendant denied any knowledge of the three bombing incidents as well as the ability to construct pipe bombs. Although defendant admitted that he had received a pair of yellow-handled channel lock pliers as a Christmas present, he denied that the pliers, by then in the custody of the postal inspector, were his.
 
 
 6
 An expert testified that the marks discovered on the pipe bomb fragments were made by the yellow-handled pliers.
 
 
 7
 The government offered numerous witnesses who testified about defendant's knowledge of pipe bombs. Eugene Sturgeon, a friend of defendant's, stated that some years ago, after he and defendant found a piece of pipe, defendant picked it up and told Sturgeon that one could make a bomb with the pipe by putting "stuff" in it and adding a fuse.
 
 
 8
 David Glerum testified that defendant had told him that he could obtain fireworks and that he knew how to make a bomb. Defendant went on to explain to him in detail how to construct a bomb and said he had access to smokeless and black powder at his father's house.
 
 
 9
 Scott Bunn, Melanie Bunn's[2] fifteen-year-old brother, testified that he and defendant used to play with explosives obtained from defendant's house. Bunn went on to state that on one occasion he saw defendant stuff a charcoalish powder into a metal pipe and then cap it.
 
 
 10
 Erie Scott Welch testified that, while growing up, he and defendant made and exploded small pipe bombs in the woods. Additionally, Welch stated that one week after the explosion at Rogers Plaza, defendant told him he had made a big mistake in blowing up the mailbox at that location.
 
 
 11
 Shortly after the blast at the shopping mall, Carl Chapman, a nearby resident, found a paper bag containing two wine cooler bottles in his driveway. The bottles were not there prior to the explosion. The same brand of coolers were recovered by Jean Bunn in her truck after she loaned the truck to defendant.
 
 
 12
 The government also presented evidence which attested to the dangerous nature of defendant's behavior. Various government witnesses testified that several people had felt the explosion of the Rogers Plaza mailbox while sitting in nearby cars, that the mailbox was located near the entrance of the shopping mall, and that, on an average day during a twenty-minute period, ten people approached the mailbox.
 
 
 13
 On June 9, 1989, the jury returned a verdict of guilty on four counts. Defendant was subsequently sentenced on October 26, 1989 to sixty-five months' imprisonment on each count. In computing defendant's offense level, the court increased the offense by 18 levels, pursuant to Sentencing Guideline Sec. 2K1.4, after finding that defendant knowingly created a substantial risk of death or serious bodily injury. Defendant appeals his convictions and sentence on various grounds.
 
 II.
 1. Closing Argument
 
 14
 Defendant's first contention is that the district court abused its discretion in prohibiting defense counsel from commenting during closing argument on certain grand jury testimony not formally admitted into evidence but referred to during the trial.
 
 
 15
 Ernie Scott Welch testified that defendant had told him that he exploded the mailbox at Rogers Plaza. After defense counsel suggested upon cross-examination that Welch's story was a recent fabrication, the government, pursuant to Fed.R.Evid. 801(d)(1)(B), introduced the testimony of Postal Inspector Edward Reda concerning a prior consistent statement made by Welch to Scott Bunn.[3] Reda testified that Scott Bunn had told him that Welch earlier had told Bunn that defendant destroyed the mailbox at Rogers Plaza.
 
 
 16
 In an effort to discount Scott Bunn's credibility, defense counsel presented to Reda a portion of the transcript of Bunn's grand jury testimony and Reda agreed that Bunn, in that testimony, had said that Welch had told him that both Welch and defendant had blown up the Roger Plaza mailbox. The transcript was not formally offered into evidence.
 
 
 17
 In closing argument, when defense counsel began to refer to Scott Bunn's grand jury testimony, apparently in an effort to point out to the jury that Bunn's story to Inspector Reda was not the same one he had told the grand jury, the court sustained the government's objection and instructed the jury to "disregard things that were not in evidence."
 
 
 18
 However, defense counsel was permitted, without objection, to eventually point out that inconsistency. Accordingly, whether or not the district court erred when defendant initially attempted to make the argument is of little consequence since defendant was later permitted to make the argument and is thus unable to demonstrate how his cause was prejudiced.
 
 2. Sufficiency of the Evidence
 
 19
 Defendant contends that his convictions with respect to Counts One and Two were not supported by sufficient evidence. Since he failed to move for a judgment of acquittal either following the government's evidence or at the close of all the evidence, appellate review is permitted only upon a showing of manifest miscarriage of justice. See United States v. Faymore, 736 F.2d 328, 334 (6th Cir.), cert. denied, 469 U.S. 868 (1984).
 
 
 20
 The government presented evidence that defendant possessed the knowledge to make pipe bombs and had access to the pliers that had been used to make them. In addition, the type of explosives used in the bombs that formed the basis for Counts One and Two was the same as that used in the Rogers Plaza mailbox bomb. A jury could reasonably conclude beyond a reasonable doubt that he committed the offenses charged in Counts One and Two.
 
 
 21
 3. Scott Bunn's Juvenile Criminal Convictions and Mental Impairment
 
 
 22
 Defendant argues that the district court abused its discretion in limiting extrinsic evidence concerning a witness' prior criminal and emotional histories and consequently denied him his right to confront and cross-examine the witness effectively.
 
 
 23
 a. Scott Bunn's Juvenile Convictions
 
 
 24
 Scott Bunn testified that as a juvenile he had been involved in robbery, theft, and check forging, but failed to mention that he was subsequently convicted. The district court refused to allow further evidence of Bunn's past offenses. Defendant contends that the court denied him his right to impeach Bunn in light of his juvenile record.
 
 
 25
 Fed.R.Evid. 609(d) provides that in a criminal case the court may allow evidence of a juvenile adjudication of a witness "if conviction of the offense would be admissible to attack the credibility of an adult and the court is satisfied that admission in evidence is necessary for a fair determination of the issue of guilt or innocence." Here, the district court determined that defendant had the right to cross-examine Bunn concerning his previous record, but that it was unnecessary to admit the formal conviction records or receive additional testimony from either Bunn's probation officer or Bunn himself. The court reasoned that the jury had been exposed to sufficient evidence about Bunn's previous crimes to make a determination as to his credibility. We are unable to say that the district court abused its discretion by refusing to allow essentially repetitive evidence.
 
 
 26
 b. Medical Evidence of Scott Bunn's Mental Impairments
 
 
 27
 Defendant also argues that the district court improperly restricted his right to cross-examine Scott Bunn about his mental impairments.
 
 
 28
 Bunn testified that, as a result of his criminal adjudications, he had spent time in a psychiatric hospital attempting to cure his behavioral and emotional problems. Defense counsel sought to examine Bunn further concerning this matter. The court, however, prevented counsel from doing so unless he could prove that Bunn suffered from an "emotional illness."
 
 
 29
 After gaining access to Bunn's juvenile psychiatric file, defense counsel attempted to present it to the jury. The court, following a thorough examination of the file,[4] refused to admit it. It reasoned that, first, there was nothing in the file that indicated Bunn's inability to tell the truth and, second, the limited relevance of the evidence would be substantially outweighed by the danger of unfair prejudice, confusion of the issues, misleading the jury, and needless presentation of cumulative evidence.
 
 
 30
 Cross-examination and extrinsic evidence of a witness' mental impairments is allowed only if the impairments relate to the witness' ability to perceive, recall, or narrate truthfully. See, e.g., United States v. Lopez, 611 F.2d 44, 45-56 (4th Cir.1979); United States v. Partin, 493 F.2d 750, 762 (5th Cir.1974); 3 J. Weinstein & M. Berger, Weinstein's Evidence p 607 (1988). Moreover, the trial court is given wide discretion in restricting such evidence and "is entitled to weigh the potential unfairness of a freewheeling inquiry intended to stigmatize the witness against whatever materiality the evidence might have." Lopez, 611 F.2d at 46; see also United States v. Gonzalez-Sanchez, 825 F.2d 572, 586 (1st Cir.), cert. denied sub nom. Latorre v. United States, 484 U.S. 989 (1987); 3 J. Weinstein & M. Berger p 607.
 
 
 31
 The offered evidence in this case would have shed little light on Bunn's testimony. The psychiatric record did not disclose any illness which would have an effect on Bunn's ability to tell the truth, perceive, or recall. Accordingly, the trial court did not abuse its discretion in refusing further cross-examination or extrinsic evidence regarding Bunn's mental impairments.
 
 
 32
 4. Evidence Concerning Bias on the Part of Ernie Scott Welch
 
 
 33
 Defendant complains that the district court erred in refusing testimony which allegedly would have shown bias on the part of Ernie Scott Welch. Specifically, defendant argues that evidence that Welch bragged he once used cocaine and was associated with people who distributed cocaine shows that Welch was biased in favor of the government out of fear of drug prosecution. Defendant also claims that evidence that Welch once accused defendant of taking part in a marijuana transaction demonstrates bias.
 
 
 34
 Extrinsic evidence of specific instances of a witness' past conduct, other than conviction of a crime, is not admissible to impeach a witness. Fed.R.Evid. 608(b). Nevertheless, extrinsic evidence is often admissible to establish bias of a witness. United States v. Phillips, 888 F.2d 38, 41 (6th Cir.1989). Even so, "admissibility is a matter within the discretion of the trial court," and should still be excluded when it is only "remotely relevant." Id. at 41; United States v. Meyer, 803 F.2d 246, 249 (6th Cir.1986), cert. denied, 480 U.S. 936 (1987).
 
 
 35
 Because the evidence was only "remotely relevant" to the issue of bias, the district court did not abuse its discretion.
 
 5. Defendant's Sentence
 
 36
 The district court determined a base offense of six for blowing up the mailbox at Rogers Plaza. However, the court further concluded that the base offense should be increased since defendant "knowingly created a substantial risk of death or serious bodily injury." Sentencing Guideline Sec. 2K1.4.
 
 
 37
 In view of the government's evidence that the mailbox had exploded, that several people felt the explosion, and that the mailbox was located in such a well-traveled area that on another weekday ten people used or walked by the mailbox during a twenty-minute interval, the district court's finding is not clearly erroneous.
 
 III.
 
 38
 For the foregoing reasons, the judgments of conviction and defendant's sentence are affirmed.
 
 
 
 *
 The Honorable John W. Potter, United States District Judge for the Northern District of Ohio, sitting by designation
 
 
 [1]
 Counts One, Two, and Four of the indictment charged defendant with unlawfully manufacturing pipe bombs which were detonated in mailboxes on August 31, 1987, January 17, 1988, and January 20, 1988. Count Four charged defendant with unlawful possession of a pipe bomb that was detonated in a mailbox on January 20, 1988. Count Five charged him with the destruction of a United States mailbox on January 20, 1988
 
 
 [2]
 Melanie Bunn was defendant's girlfriend in 1987 and 1988
 
 
 [3]
 No claim is raised on appeal that this testimony was double hearsay
 
 
 [4]
 The most severe diagnosis in the file was that Bunn suffered from a personality disorder with dependent, passive/aggressive and narcissistic features and an attention deficit disorder for which he took medication