986 F.2d 1423
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Albert C. GOLDSMITH, Defendant-Appellant.
 No. 91-6357.
 United States Court of Appeals, Sixth Circuit.
 Feb. 3, 1993.
 
 Before RALPH B. GUY, JR. and BATCHELDER, Circuit Judges, and LIVELY, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Defendant-appellant, Albert C. "Goldie" Goldsmith, appeals his conviction for possession of cocaine with intent to distribute in violation of 21 U.S.C. § 841(a)(1). We affirm.
 
 I.
 
 2
 On the evening of January 2, 1990, Senior Special Agent Roy Schremp of the Immigration and Naturalization Service and Sergeant Pat Hanka and Detective Rusty Wilson of the Louisville Police Department Narcotics Unit were on duty. Wilson had thirteen years and Schremp two-and-a-half years drug enforcement experience. Hanka, who was driving the officers' car, pulled into the parking lot of the Pro-Bowl II bowling alley to allow Schremp to use the restroom there. When Schremp entered the bowling alley, he observed Goldsmith, whom he recognized from a previous arrest picture. Goldsmith did not appear to have any bowling equipment with him. Schremp recently had received information concerning Goldsmith's suspected involvement in cocaine distribution.
 
 
 3
 The three officers decided to remain at the Pro-Bowl II and observe Goldsmith for a time. It was about 9:00 p.m. From their car, which was approximately forty feet away, the officers observed Goldsmith make approximately four or five trips to his Honda automobile, and then back to the bowling alley. Each time Goldsmith walked to his car, he looked around as if waiting for someone. The officers then observed Goldsmith leave the bowling alley again, get into his car, move it from one side of the bowling alley to the other, and return to the alley. Goldsmith made several more round trips from the bowling alley to his car before finally moving his car back into the parking space he had recently vacated, and returning to the bowling alley. Schremp concluded from this activity that a drug transaction was about to occur.
 
 
 4
 A short time after Goldsmith had moved his car back into its original parking space and returned to the bowling alley, a brown Toyota with a male driver and a female passenger pulled into the space directly opposite Goldsmith's car. The man, later identified as James Greenwell, immediately got out of his car, walked over to Goldsmith's car, and opened the front passenger door, causing the dome light to come on. He then bent over, appeared to place something into Goldsmith's car, and emerged from the passenger compartment holding a shiny object. Greenwell placed this object in his left coat pocket, returned to his car, and started to leave. At this point, Hanka pulled the police car in front of Greenwell's car, and the officers got out, showed their badges, identified themselves as police officers, and told Greenwell to get out of the car. At least one officer drew his weapon.
 
 
 5
 Schremp patted Greenwell down for weapons, but found none. While Greenwell was producing a driver's license, Schremp reached into Greenwell's left coat pocket and removed the shiny object, which was found to consist of $6,000 in cash wrapped in aluminum foil.[1] Greenwell maintained he had not been in Goldsmith's car but had been in the bowling alley. A consensual search of Greenwell's car revealed no other incriminating evidence. It was now approximately 9:45 or 10:00 p.m.
 
 
 6
 While Greenwell's car was being searched, Goldsmith walked out of the bowling alley. No officers had their weapons drawn at this time. It is unclear whether Goldsmith approached the officers, they approached him, or Goldsmith and the officers approached each other. However, a conversation ensued between the officers and Goldsmith. The officers informed Goldsmith that they had stopped Greenwell because they saw him entering Goldsmith's car. Goldsmith acknowledged that the car in question was his, but maintained that Greenwell could not have entered his car because it was locked. Goldsmith also denied knowing Greenwell.
 
 
 7
 The officers, prompted by the inconsistency between Goldsmith's assertion that the car was locked and their own observation that Greenwell entered what appeared to be an unlocked car, sought consent to perform a search. According to Schremp, Wilson asked Goldsmith "if he minded if he checked his car and looked at his car." Wilson testified that he asked Goldsmith if he could "look[ ] in his car." Goldsmith assented, although the parties dispute whether he assented to a search of the interior of the car or only to a check of the car to see if it was locked, as Goldsmith maintained. Goldsmith also handed over his car keys to the officers.
 
 
 8
 As Wilson walked away from Goldsmith and toward Goldsmith's car, Goldsmith yelled to him to use the black key. Wilson used that key to open the car. Inside, partially under the front passenger seat, Wilson found a package containing approximately eight ounces of cocaine. Goldsmith was arrested. He had on his person $1,800 in cash, which he maintained belonged to his son.
 
 
 9
 On April 2, 1990, a three-count superseding indictment was filed, charging Goldsmith in one count with possession of cocaine with intent to distribute, in violation of 21 U.S.C. § 841(a)(1).[2] On May 24, 1990, Goldsmith filed a motion to suppress the evidence seized in connection with his arrest. The district court adopted the recommendation of the magistrate to whom the matter had been referred and denied Goldsmith's motion.
 
 
 10
 Goldsmith's jury trial began on August 22, 1991. Greenwell, who already had pleaded guilty,[3] testified as a defense witness. Greenwell maintained that he did not know Goldsmith. Greenwell also testified that someone whose identity he did not know had called him on the phone, told him to place a package of cocaine in a blue Toyota in the Pro-Bowl II parking lot, and informed him that he would receive payment later. However, according to Greenwell, because he was intoxicated at the time, he mistakenly placed the cocaine in Goldsmith's Honda. Greenwell also denied that he had removed a package from Goldsmith's car.
 
 
 11
 Also testifying for Goldsmith at the trial were William Bogard and Ronnie Glenn Davis. Bogard, a former cocaine addict, testified that the street value of cocaine at the time of Goldsmith's arrest was at least $1,000 an ounce. Davis testified that Bogard had been like a big brother to him and that Bogard had sought Davis's assistance in obtaining Bogard's release from prison. Davis also testified that he had received $500 from Officers Wilson and Hanka for confidential information provided to the government shortly before Goldsmith's arrest; that he had given information in the past to the Louisville police concerning Goldsmith's illegal activities; and that he and Goldsmith had dated the same woman. Goldsmith attempted to have admitted into evidence the criminal records of Bogard and an individual named William Hensley and a cassette recording of the state-court criminal proceedings of Bogard and Hensley. The district court conditionally admitted this evidence but later excluded the evidence and instructed the jury not to consider it. Goldsmith was convicted and sentenced to 44 months incarceration. He timely appealed.
 
 II.
 A.
 
 12
 Goldsmith first contends that when the officers encountered and questioned him, a seizure occurred. He alleges that the officers lacked reasonable suspicion to support even a brief investigatory detention permissible under Terry v. Ohio, 392 U.S. 1 (1968). This contention is meritless.
 
 
 13
 A seizure within the meaning of the Fourth Amendment occurs only when a police officer, "by means of physical force or show of authority, has in some way restrained the liberty of a citizen...." United States v. Richardson, 949 F.2d 851, 855 (6th Cir.1991) (quoting Terry, 392 U.S. at 19 n. 16). When officers "merely approach[ ] an individual on the street or in another public place" and ask questions, or when voluntary answers to these questions are introduced into evidence, no Fourth Amendment violation has occurred. Id. (quoting United States v. Flowers, 909 F.2d 145, 147 (6th Cir.1990) (per curiam) (quoting Florida v. Royer, 460 U.S. 491, 497 (1983)). Factors for consideration in determining whether a seizure has occurred include "the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled." Id. (quoting United States v. Mendenhall, 446 U.S. 544, 554 (1980)).
 
 
 14
 The entire encounter between Goldsmith and the officers was brief and noncoercive. The officers identified themselves but did not surround Goldsmith, threaten him, hold or frisk him, or draw their weapons. Although three officers were present, nothing indicates that their presence was especially "threatening." Goldsmith was asked questions and voluntarily provided answers. We conclude that, because a reasonable person in Goldsmith's place would have felt free to leave, no seizure occurred.[4]
 
 B.
 
 15
 Goldsmith next alleges that the government failed to meet its burden of proving that Goldsmith's consent to the car search was voluntary. Goldsmith maintains that the testimony is conflicting on whether he consented to have his car searched or merely checked to ascertain whether, as Goldsmith asserted, it was locked. According to Goldsmith, he handed over his keys to Officer Wilson only to prove that his car was locked, not to indicate consent to use of the keys to open and search his car.
 
 
 16
 This argument is patently meritless. The district court found that Goldsmith voluntarily consented to the search of his car. The court concluded that although the verbal request for consent, by itself, arguably was ambiguous as to the scope of the search, Goldsmith, by handing over his keys and telling Officer Wilson which key to use, voluntarily consented to a search of the interior of the car. The government bears the burden of proving, by "clear and positive testimony," that voluntary consent was given. United States v. Jones, 846 F.2d 358, 360 (6th Cir.1988) (per curiam) (quoting United States v. Scott, 578 F.2d 1186, 1188-89 (6th Cir.), cert. denied, 439 U.S. 870 (1978)). The finding of voluntariness is a factual finding, subject to reversal only if clearly erroneous. Id. A factual finding is clearly erroneous only if a reviewing court is left with the definite and firm conviction that an error has occurred. Sawyer v. Arum, 690 F.2d 590, 591-92 (6th Cir.1982). Goldsmith's argument, that he handed over the keys only to enable the officers to verify that the car was locked, is ridiculous. The district court's finding of voluntariness is not clearly erroneous and will be upheld.
 
 C.
 
 17
 Goldsmith next argues that there is insufficient evidence to support a conviction for possession of cocaine with intent to distribute. This court must uphold a conviction against a sufficiency of the evidence challenge if "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979). Wholly circumstantial evidence need not remove every reasonable hypothesis except that of guilt to be the basis for conviction. U.S. v. Stone, 748 F.2d 361, 363 (6th Cir.1984).
 
 
 18
 Goldsmith relies primarily on two cases, U.S. v. White, 932 F.2d 588, and United States v. Ramirez, 880 F.2d 236 (9th Cir.1989). In White, we reversed the conviction of a defendant who was found guilty of possession with intent to distribute marijuana. In that case, we noted that "the only evidence linking [the defendant] to the marijuana was the fact that he lived three feet from the patch [of marijuana]." Id. at 589. The marijuana was not growing on the defendant's property, and there was no evidence, circumstantial or otherwise, to link White to the marijuana. Here, by contrast, the presence of eight ounces of cocaine in Goldsmith's car could lead a rational trier of fact to conclude, beyond a reasonable doubt, that Goldsmith had constructive possession of eight ounces of cocaine. "To establish constructive possession, the evidence must indicate 'ownership, dominion, or control over the contraband itself or the premises or vehicle in which the contraband is concealed.' " White, 932 F.2d at 589 (quoting United States v. Gordon, 700 F.2d 215, 217 (5th Cir.1983)).
 
 
 19
 Ramirez also is inapposite. In that case, the Ninth Circuit reversed the conviction of a defendant who had spent the night in a bedroom that contained a large sum of money, a loaded pistol, a drug ledger, and a kilo of cocaine, none of them in open view. When the police entered the house, they saw Ramirez emerge from a bathroom that contained--in plain sight--a triple-beam scale. Also in the bathroom, but hidden from view, were cocaine and other drug paraphernalia. Although Ramirez was a cocaine user, and there were traces of cocaine on a $20 bill found in his shorts, there was no evidence that he knew of the cocaine or paraphernalia or kept any clothes in the bedroom in which he slept. There also was no evidence linking him to the drug ledgers and no evidence that he had sold drugs or participated in any way in a drug transaction.
 
 
 20
 Here, in contrast, the cocaine was discovered in a car belonging to Goldsmith, shortly after Goldsmith had returned the car to its original parking space. Moreover, the cocaine was discovered immediately after Greenwell apparently had placed an object in the very part of the car in which the cocaine was found. The present case thus is distinguishable from White and Ramirez. See also United States v. Maldonado, 735 F.2d 809, 817-18 (9th Cir.1984) (where defendant was owner and driver of car in which heroin was found and was absent from car "only for a brief interval" before heroin was discovered, evidence was sufficient to convict); Eason v. United States, 281 F.2d 818, 821 (9th Cir.1960) (although narcotics could have been secreted in appellants' car, as alleged, by strangers while appellants were absent from car, reasonable jury could find evidence was sufficient to convict); cf. United States v. Gonzalez, 703 F.2d 807, 808 (5th Cir.1983) (where three hours elapsed between time defendant was last seen in van and time van was discovered, abandoned and containing marijuana, and where no testimony linked defendant to drug-smuggling scheme or placed him in the same location and time frame as the drugs, evidence was insufficient to convict). Here, the jury, as they were entitled to do, obviously disbelieved Greenwell's testimony that he had placed the cocaine in Goldsmith's car by mistake. See Maldonado, 735 F.2d at 817 (finding that because "much of [the witness's] testimony simply strains belief," the jury reasonably could have rejected testimony of witness that he, and not defendant, had exclusive knowledge of the heroin found in defendant's car).
 
 
 21
 Finally, intent to distribute can be inferred from "possession of a large quantity of the substance." White, 932 F.2d at 590 (quoting United States v. Franklin, 728 F.2d 994, 998 (8th Cir.1984)). There was testimony here that the cocaine found in Goldsmith's car had a street value of at least eight thousand dollars. A rational jury could have found, beyond a reasonable doubt, that this amount of cocaine was inconsistent with personal use and that Goldsmith intended to distribute the cocaine.
 
 D.
 
 22
 Goldsmith next alleges that the district court erred by refusing to voir dire prospective jurors on whether they would construe Goldsmith's failure to testify as evidence of his guilt. A court has broad discretion in conducting voir dire. United States v. Johnson, 584 F.2d 148, 155 (6th Cir.1978), cert. denied, 440 U.S. 918 (1979). However, the questioning must satisfy "the essential demands of fairness." Aldridge v. United States, 283 U.S. 308, 310 (1931). Moreover, a defendant's request to voir dire the jury on the presumption of innocence and the government's burden of proof must be honored. United States v. Hill, 738 F.2d 152, 153 (6th Cir.1984). The failure to do so requires reversal. United States v. Blount, 479 F.2d 650, 651 (6th Cir.1973).
 
 
 23
 In its preliminary instructions, the district court instructed the jury on presumption of innocence and burden of proof and on their duty to apply the law as explained to them by the court. The district court also questioned the jurors about whether they would be able to follow the court's instructions on the law. These instructions met the requirements of Blount.
 
 
 24
 We find no abuse of discretion in the district court's refusal to voir dire the jury regarding possible prejudice against the defendant if he failed to testify. The court based its refusal on the fact that it did not know whether the defendant would, in fact, not testify, and advised counsel that this was a matter for instructions and that he would question the jury as to whether they would follow the instructions of the court on the law, regardless of whether they agreed with it. This the court did. See United States v. Goodwin, 470 F.2d 893, 897-98 (5th Cir.1972) (where jury panel agreed to follow court's instructions, and court determined to instruct jury after submission of the case if defendant did not take the stand, failure to voir dire jury on effect of defendant's refusal to testify held not an abuse of discretion), cert. denied, 411 U.S. 969 (1973).
 
 E.
 
 25
 Finally, Goldsmith alleges that the district court erred in excluding the criminal records of Bogard and Davis and the cassette tape. Goldsmith argues for the first time in his Reply Brief that these exhibits are admissible as substantive evidence bearing on the charged offenses. This argument was not raised in the district court and, therefore, is waived. Taft Broadcasting Co. v. United States, 929 F.2d 240, 243-44 (6th Cir.1991).
 
 
 26
 Goldsmith also argues that this evidence should have been admitted because it goes to the credibility of the officers' testimony or to bias. We will not disturb a district court's evidentiary ruling absent an abuse of discretion. See United States v. Phillips, 888 F.2d 38, 40 (6th Cir.1989). "Fed.R.Evid. 608(b) specifically prohibits a party from introducing extrinsic evidence to prove specific instances of conduct of a witness for the purpose of attacking or supporting his credibility." Id. at 41 (quoting United States v. Graham, 856 F.2d 756, 759 (6th Cir.1988), cert. denied, 489 U.S. 1022 (1989)).
 
 
 27
 Here, Goldsmith attempted to impeach the testimony of the officers through extrinsic evidence of prior incidents involving the officers and Davis, Hensley, and Bogard. The district court did not abuse its discretion in excluding this evidence. See Graham, 856 F.2d at 759 (district court did not abuse its discretion in excluding extrinsic evidence of witness's ulterior motives for aiding in F.B.I. investigation, where defendant sought to introduce evidence to attack credibility of witness who had testified against defendant). Finally, to the extent Goldsmith suggests the excluded evidence would have shown bias against him, the district court was within its discretion in rejecting this evidence, which was, at best, remotely relevant. See United States v. Meyer, 803 F.2d 246, 249 (6th Cir.1986), cert. denied, 480 U.S. 936 (1987).
 
 III.
 
 28
 The decision of the district court is affirmed.
 
 
 
 [1]
 Greenwell's motion to suppress this evidence was granted by the district court on the basis that the pat-down search, and the subsequent seizure of the package, were not based on a reasonable suspicion that Greenwell was armed
 
 
 [2]
 Goldsmith was named in only one count of the superseding indictment. The other two counts charged Greenwell with distribution and possession with intent to distribute cocaine
 
 
 [3]
 Greenwell received a sentence of twelve-and-a-half years incarceration
 
 
 [4]
 Even were we to conclude that Goldsmith was seized, the short duration and unintrusive nature of the seizure indicate that, at most, it constituted a Terry stop. A Terry stop must be supported by "a particularized and objective basis for suspecting the particular person stopped of criminal activity." United States v. Cortez, 449 U.S. 411, 417-18 (1981). At the time that the police encountered Goldsmith, they had information that he was a suspected cocaine dealer; they had observed Goldsmith make repeated trips to and from his car while apparently looking for someone and move his car from one side of the bowling alley to the other and then back to the original parking space; they knew that Greenwell had entered Goldsmith's car and apparently placed one object in the car and removed another; and, on questioning, they had received from Greenwell answers that appeared to be inconsistent with their observations. This information established reasonable suspicion to detain and briefly question Goldsmith