104 F.3d 361
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Timothy ROBINSON, Defendant-Appellant.
 No. 95-6225.
 United States Court of Appeals, Sixth Circuit.
 Dec. 19, 1996.
 
 Before: MARTIN, Chief Judge; WELLFORD and MOORE, Circuit Judges.
 OPINION
 MOORE, Circuit Judge.
 
 
 1
 Defendant-Appellant Timothy Robinson appeals from a jury conviction of possessing cocaine with the intent to distribute and conspiring to do the same. Robinson contends that the government failed to establish at trial a proper chain of custody for the contraband and that the Speedy Trial Act was violated. Because we hold that a sufficient chain of custody was established at trial and that defendant waived his Speedy Trial Act challenge, we affirm the judgment of the district court.
 
 
 2
 * Timothy Robinson and Katryna Hooker were arrested at the Nashville airport on February 5, 1995. After Robinson and Hooker deplaned from a Los Angeles flight, DEA agents approached Hooker, who agreed to speak with them and consented to a pat-down search, whereupon an agent felt one of two bags of cocaine she had taped to her stomach and back. Hooker admitted that she was traveling with Robinson and that Robinson had arranged all the details of the drug transport. No drugs were found on Robinson.
 
 
 3
 An indictment was filed against both Robinson and Hooker, alleging possession of a controlled substance with intent to distribute in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2 and conspiracy to possess with intent to distribute a controlled substance in violation of 21 U.S.C. § 846. Robinson appeared before a magistrate judge on February 10, 1995, and then again for a detention hearing on February 13, 1995. He was subsequently detained.
 
 
 4
 Robinson's trial was set for May 2, 1995. Robinson represented to the government that he would likely waive his rights under the Speedy Trial Act. On April 14, 1995, the government moved for a continuance because the scheduled trial date conflicted with a two-week DEA training session that would preclude several witnesses from testifying. Four days later, the court ordered the trial set for April 25, 1995. On April 24, 1995, Robinson, apparently to the surprise of the government, decided not to waive his speedy trial rights. The following day, the district court reset the trial date for May 16, 1995, and found that the continuance satisfied the Speedy Trial Act's "ends of justice" directive. A jury was impaneled on May 16, 1995, the trial began on May 18, 1995, and the jury returned a verdict on May 19, 1995. Hooker had entered into a plea agreement with the government and testified against Robinson at trial. Robinson was found guilty of possession with intent to distribute and conspiracy.
 
 
 5
 Robinson moved for a new trial claiming that the prosecution failed to establish a proper chain of custody. The district court denied the motion, finding that a valid chain of custody had been adequately established. At trial the evidence showed that DEA Interdiction Task Force Officer Debra Pace removed two cocaine packages from Hooker, placed the packages into plastic bags, and then tagged, sealed, and initialed the bags. Pace, with DEA Agent Mark Lockwood, then took the sealed packages to a temporary property room located in the booking room of the Nashville Metropolitan Police Department. Pace filled out a property sheet and placed the drugs into a safe. At the Metropolitan property room, only the custodian and Pace had access to the packages. At some point that night the drugs were moved from the temporary property room to a permanent police property room located in an adjacent building.
 
 
 6
 The next day, February 6, 1995, Pace removed the sealed evidence from the permanent property room and turned it over to Lockwood, who mailed the packages to the DEA drug lab in Miami, return receipt requested. In Miami, DEA chemist Aruna Kumar unsealed the packages, performed a chemical analysis, then resealed and returned the packages to Lockwood via Federal Express. The drugs were stored in the permanent property room until brought into court, seals intact, for Robinson's trial. Agents Pace, Lockwood, and Kumar testified at trial as to the custody and identity of the government's exhibits. Pace and Kumar identified their initials on the labels of each exhibit. Hooker also testified that the exhibits were the drugs that had been taped to her body. There was no testimony as to the transfer of the evidence from the temporary property room to the adjacent permanent property room.
 
 II
 
 7
 The defendant challenges the admission into evidence of the packages of cocaine, alleging that the prosecution failed to establish a proper chain of custody. The decision to admit or exclude evidence is within the sound discretion of the trial court and should be reversed on appeal only for a clear abuse of that discretion. See United States v. Phillips, 888 F.2d 38, 40 (6th Cir.1989). "Abuse of discretion exists where the reviewing court is firmly convinced that a mistake has been made." Id.
 
 
 8
 Physical evidence may be admitted when there has been a showing that the exhibit offered is in substantially the same condition as it was when the crime was committed. United States v. Aviles, 623 F.2d 1192, 1197 (7th Cir.1980). "Absent a clear showing of abuse of discretion, challenges to the chain of custody go to the weight of evidence, not its admissibility." United States v. Levy, 904 F.2d 1026, 1030 (6th Cir.1990), cert. denied sub nom. Black v. United States, 498 U.S. 1091 (1991). "[A] missing link does not prevent the admission of real evidence, so long as there is sufficient proof that the evidence is what it purports to be and has not been altered in any material aspect." United States v. Howard-Arias, 679 F.2d 363, 366 (4th Cir.1982), quoting United States v. Jackson, 649 F.2d 967 (3d Cir.), cert. denied, 454 U.S. 1034 (1981).
 
 
 9
 We have no doubt that the packages of cocaine admitted into evidence at trial were the same packages that were removed from Hooker by Pace. After witnessing Lockwood field test the powdered substance, Pace put the packages into plastic bags; Pace next heat-sealed, labeled, and initialed those bags. Pace and Lockwood then took the bags to the temporary property room inside Metropolitan Police Headquarters. The bags were in the police property room for less than twenty-four hours before the same agents retrieved them. When the agents retrieved the bags, all seals, labeling, and initialing were intact.
 
 
 10
 Appellant's assertion of a "broken" chain lies entirely with the transfer of the evidence from a temporary police property room to a permanent one. Robinson has made no showing of any irregularities that might have occurred in the routine police procedures for handling and storing evidence. Where there is no evidence of tampering with the exhibits, "the presumption of regularity attends official acts of public officers and the courts presume that their official duties have been discharged properly." Aviles, 623 F.2d at 1198. The unaccounted-for transfer from one police property room to another is not sufficient to break the chain of custody here, where nothing suggests that the items are other than what they purport to be and what several witnesses identified at trial.
 
 
 11
 We further note that Robinson's counsel elicited on cross examination the fact that Pace could not account for the drugs from the time that they were dropped into the safe until she returned the next day to retrieve them. The jury was able to weigh that testimony accordingly. Such a minor "missing link" was properly a jury consideration, rather than a bar to admissibility.
 
 
 12
 Appellant cannot prevail on this issue. The chain of custody for the exhibits was substantially complete. Several witnesses testified at trial that the exhibits were in fact the actual drugs that had been taped to Hooker, stored in the police property room, analyzed at the DEA lab, and then returned to the property room. The seals remained intact during the alleged "break" in the chain and were likewise intact at trial. Taking into account the lack of evidence of tampering and the presumption that routine police procedures for storing contraband were followed, the district court could properly determine that the evidence was admissible. We conclude that the district court did not abuse its discretion in reaching that determination.
 
 B
 
 13
 The Speedy Trial Act sets forth a seventy-day time limit for trial, from the later of the indictment's filing date or the date defendant first appears before a judicial officer to, generally, jury voir dire. 18 U.S.C. § 3161(c)(1); United States v. Scaife, 749 F.2d 338, 343 (6th Cir.1984). Excluded from the applicable period are delays due to pretrial motions, 18 U.S.C. § 3161(h)(1)(F), and delays resulting from continuances granted by the court if the "ends of justice" served by the continuance outweigh the best interests of the public and the defendant in a speedy trial. 18 U.S.C. § 3161(h)(8)(A).
 
 
 14
 By never raising a challenge under the Speedy Trial Act at the district court level, Robinson has failed to preserve this issue for appeal. The Act provides that if a defendant is not brought to trial in time, the "indictment shall be dismissed on motion of the defendant.... Failure of the defendant to move for dismissal prior to trial ... shall constitute a waiver of the right to dismissal under this section." 18 U.S.C. § 3162(a)(2). It is without dispute that Robinson failed to move for dismissal prior to, or even after, trial as required by the statute. Accordingly, Robinson has waived appellate review of this issue.
 
 
 15
 Even if we were to review Robinson's Speedy Trial Act challenge, we find it to be without merit. Under our computation, no violation of the Speedy Trial Act occurred because Robinson's trial was, in fact, held within the seventy-day limit. Robinson's speedy trial clock began on February 11, 1995, the day after his initial appearance in court. Excluding the periods for consideration of the government's detention and continuance motions (February 11-13; April 15-25), and the trial court's "ends of justice" continuance (April 25-May 16), a period of sixty days passed from Robinson's initial appearance to jury voir dire and the start of his trial. Thus, the temporal strictures of the Act were not violated.
 
 
 16
 Moreover, a defendant claiming that the district court improperly granted an excludable continuance must demonstrate actual prejudice in order to obtain reversal. United States v. Cianciola, 920 F.2d 1295, 1301 (6th Cir.1990), cert. denied, 501 U.S. 1219 (1991). Here, the district court made an oral finding on the record that the "ends of justice" justified the continuance from April 25, 1995 to May 16, 1995, due to the unavailability of essential government witnesses during the two-week DEA training session. Even if this continuance was somehow improperly granted, the trial was held less than two weeks beyond the seventy-day limit. Robinson has not shown how he was prejudiced by such an insignificant delay, particularly after leading all parties to believe that he would be waiving his speedy trial rights but then changing his mind just prior to trial.
 
 III
 
 17
 We hold that the government's evidence at trial sufficiently established a proper chain of custody for the contraband, and that Robinson has waived appellate review of his otherwise meritless Speedy Trial Act contention. We thus AFFIRM the judgment rendered against Robinson in the district court.